MacDONALD v STATE FARM MUTUAL INSURANCE COMPANY

Docket No. 51725. Submitted March 5, 1981, at Grand Rapids.— Decided August 18, 1981. Leave to appeal applied for.

Donald A. MacDonald brought an action against State Farm Mutual Insurance Company seeking to recover work-loss benefits under a no-fault insurance contract because of injuries received in an automobile accident. Plaintiff subsequently suffered a heart attack prior to a decision on his claim, and defendant argued that plaintiff was entitled to work-loss benefits only from the date of the accident until the date on which he suffered the heart attack. Grand Traverse Circuit Court held that plaintiff was eligible to receive work-loss benefits under the provision of the no-fault act and ordered defendant to pay work-loss benefits to plaintiff, William R. Brown, J. Defendant appeals. *Held:*

The contract of insurance provided that the plaintiff would be entitled to work-loss benefits where he was unable to earn his normal wage as a result of injury received in an automobile accident. Plaintiff was injured in such an accident and the injuries were sufficient to render him unable to work. Other, subsequent and independent injuries which resulted in plaintiff's temporary inability to earn an income do not make plaintiff ineligible to receive the work-loss benefits.

Affirmed.

CYNAR, J., dissented. He would hold that the no-fault act does not provide that work-loss benefits should be paid solely because an insured is injured in an automobile accident but that work-loss benefits should be paid only for the actual economic loss which the insured would have incurred as a result of the injury. Where a subsequent, independent injury otherwise would render the insured unable to work but would not result in actual economic loss because the insured was self-employed and ineligible for workers' compensation or unemployment benefits, work-loss benefits should not be paid. However, once the insured is recovered from the subsequent injury and is still

REFERENCE FOR POINTS IN HEADNOTE
[1] 7 Am Jur 2d, Automobile Insurance § 361.

disabled from the accidental injury, work-loss benefits should be resumed. He would reverse.

Opinion of the Court

1. Insurance — No-Fault Insurance — Work-Loss Benefits — Statutes.

A contract of insurance, consistent with the provisions of the no-fault act, which provides that an insured is entitled to work-loss benefits where he is unable to earn his normal wages because of an injury resulting from an automobile accident entitles the insured to such benefits where the injuries sustained in an automobile accident are a sufficient cause of his inability to work; other, subsequent and independent injuries which occur during the period in which the insured is receiving work-loss benefits and which otherwise would result in temporary periods of unemployment do not render the insured ineligible to continue to receive the work-loss benefits as long as the original injury continues to be a sufficient cause of the insured's inability to work (MCL 500.3107a; MSA 24.13107[1]).

Dissent by Cynar, J.

2. Insurance — No-Fault Insurance — Work-Loss Benefits — Statutes.

A person injured in an automobile accident may not continue to collect work-loss benefits under a contract of insurance, consistent with the no-fault act, during a period of time in which he would otherwise incur no actual economic loss as a result of a subsequent, unrelated disability; however, where the person recovers from the unrelated disability and continues to be disabled due to the accidental injury, work-loss benefits should be resumed (MCL 500.3107[b]; MSA 24.13107[b]).

*Robb, Dettmer & Phillips, P.C.* (by *George R. Thompson*), for plaintiff.

*Williams, Coulter, Cunningham, Davison & Read,* for defendant.

Before: R. B. Burns, P.J., and T. M. Burns and Cynar, JJ.

T. M. Burns, J. The factual posture of this case

is accurately set forth in Judge Cynar's dissenting opinion.

There may have been any number of reasons why plaintiff could not have worked following the accident. However, as long as his injuries from the accident were sufficient in themselves to preclude him from working, he is eligible for work-loss benefits. Absent evidence that plaintiff's heart attack will result in permanent unemployment, plaintiff is entitled to continued work-loss benefits under MCL 500.3107a; MSA 24.13107(1), inasmuch as it resulted in his becoming "temporarily unemployed * * * during the period of disability * * *". The attempt by the dissent to distinguish this statute is not persuasive in view of this plain language.

The purpose of the no-fault act is to provide prompt recompense to automobile accident victims for their injuries. *Liberty Mutual Ins Co v Allied Truck Equipment Co,* 103 Mich App 33; 302 NW2d 588 (1981). Under the scheme proposed by defendant, an accident victim would be entitled to work-loss benefits only for those days which he actually would have worked. Presumably, for those days on which the victim was ill from causes unrelated to the accident, on which he would have been unable to work because of a scheduled, conflicting, personal commitment, or on which he would have been unable to work because of an uncooperative automobile battery on a February morning, work-loss benefits would be reduced. This, of course, would greatly complicate the Legislature's simple plan for speedy payment of benefits.

The contract under which plaintiff was insured by defendant provided that he would be entitled to work-loss benefits if, because of an automobile accident, he was unable to earn his normal wages.

An automobile accident has rendered plaintiff unable to earn his normal wages. As long as the injuries plaintiff sustained in the automobile accident are a sufficient cause of his inability to work, other, subsequent and independent injuries which result in temporary periods of unemployment do not make plaintiff ineligible to receive work-loss benefits.

Affirmed.

R. B. Burns, P.J., concurred.

Cynar, J. *(dissenting)*. Defendant appeals as of right from an opinion and judgment entered in Grand Traverse County Circuit Court on May 13, 1980, ordering that plaintiff recover work-loss benefits from defendant for 28 months under the no-fault act, MCL 500.3107(b); MSA 24.13107(b).

The facts are not in dispute, having been stipulated by the parties. Plaintiff was injured in a single-car accident on November 10, 1976. As a result of his injuries, plaintiff was disabled for a period of 28 months. On November 25, 1976, plaintiff suffered an unrelated myocardial infarction (heart attack). The heart attack disability was continuing at the time this case was decided. Plaintiff claimed that he was entitled to work-loss benefits under § 3107(b) for the 28-month period of disability causally related to the automobile accident. Defendant claimed that plaintiff was only entitled to work-loss benefits from the date of the automobile accident until the date of the subsequent, unrelated disability, approximately 15 days.

The trial court determined that there was a latent ambiguity in § 3107(b), raising the question of whether or not there need be a causal connection between the injury resulting from the automo-

bile accident and the employment. The trial court stated that the ambiguity must be construed consistent with the policy of the no-fault act and public policy and held "that payment of benefits should extend for the full period of disability arising from the accident".

This case presents an issue of first impression requiring interpretation of § 3107(b) of the no-fault act, MCL 500.3107(b); MSA 24.13107(b). The issue is whether a person may continue to collect work-loss benefits for the total period of an automobile accident-related disability even though he incurs an unrelated physical disability during the period of the accident-related disability. I conclude that an injured person may not continue to collect work-loss benefits for the period of time in which he would have been unable to work as a result of his subsequent, unrelated disability.

The relevant statute provides in pertinent part:

"SEC. 3107. Personal protection insurance benefits are payble for the following:

* * *

"(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured * * *."

Shortly after the no-fault act was enacted, an amendment was made adding MCL 500.3107a; MSA 24.13107(1) which provides:

"SEC. 3107a. Subject to the provisions of section 3107(b), work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident."

Defendant claims that the language of § 3107(b) is unambiguous in stating that personal protection insurance benefits are payable only for work which the injured person "would have performed" if he had not been injured. Under defendant's view, the independent, disabling heart attack rendered plaintiff ineligible for benefits because as a result of the heart attack he would not have performed any work even if he had not been injured in the auto accident.

Plaintiff counters with the proposition that the intent of § 3107(b) is that benefits should be paid whenever a loss of present income is established resulting from injury sustained in an auto accident and that the payment of benefits is to continue regardless of intervening causes by which a plaintiff would be prevented from performing work. Plaintiff's chief supports for this view are: (1) that § 3107a provides benefits even for one who is unemployed, which demonstrates that causes of work loss independent of the auto injury are irrelevant, and (2) that defendant's view would defeat the purpose of the act to promptly provide readily determinable benefits to compensate victims of auto accidents for their lost income because administration of a program where intervening causes can cut off benefits would be impractical, uncertain, and likely to generate excessive litigation.

The language of § 3107(b) appears clear and unambiguous when that section is read in isolation, and its plain meaning is to require that, but for the accident-related injury, a plaintiff actually would have performed work.

It is inescapable, however, that such a meaning is in direct conflict with § 3107a as that section has been interpreted by this Court. Section 3107a

has been held to provide benefits to compensate an injured person for work loss even though that person is temporarily unemployed. *Harper v Progressive Casualty Ins Co,* 79 Mich App 764; 263 NW2d 1 (1977). Where a plaintiff claiming work-loss benefits is temporarily unemployed, *Harper* held that he is entitled to those benefits even though he actually would not have incurred a wage loss (since by reason of the independent cause of being laid off he would not have been able to work).

The apparent conflict between the plain language of § 3107(b) and the meaning of § 3107a constitutes an ambiguity which calls for interpretation.

This does not mean, however, that plaintiff's interpretation is correct.

*Harper* was the first case to construe § 3107 after the amendment adding § 3107a. In that case, the defendant insurance company refused to pay benefits to a plaintiff who was temporarily unemployed at the time of his auto accident. The analysis in *Harper* took notice of the fact that the language of § 3107 was patterned after the uniform motor vehicle reparation act. A comment to § 1(5)(ii) of that act, 14 ULA, Civil Procedural and Remedial Laws, Uniform Motor Vehicle Accident Reparations Act (Master ed, 1980), § 1(a)(5)(ii), Comment, pp 54-55, made it clear that unemployed persons were not considered to suffer "work loss" as a result of an accident until such time as they would have been employed but for the accident. This is in accord with defendant's general proposition that independent intervening causes preclude recovery. *Harper* points out that, in adopting the language of the uniform act, the Legislature would normally be presumed to have been familiar with

the meaning intended by the drafters. As explained in *Harper,* however, the Legislature apparently did not wish to preclude the temporarily unemployed from receiving benefits. The legislative history of the enactment of § 3107a indicates that it was added in response to a particular aberration in the overall legislative scheme of protection against loss of income.

The problem was that a temporarily unemployed person, prior to his accident, normally was eligible for unemployment benefits. Upon receiving a disabling injury in an auto accident, he no longer would be eligible for unemployment compensation because he would not be available for work. The intent of the Legislature in enacting § 3107a was to include temporarily unemployed persons in the class of people who are eligible for "work-loss" benefits under § 3107(b). *Harper* found § 3107a to be retroactive on the rationale that the omission of its language from the original act was a mistake and then noted that such a holding made a construction of § 3107(b) "work loss" before the amendment unnecessary. It is inferred, however, that, were it not for § 3107a, the meaning of § 3107(b) is plain on its face and requires "but for" causation. The effect of § 3107a is to amend this general requirement to allow recovery of benefits by the temporarily unemployed. *Lewis v Detroit Automobile Inter-Ins Exchange,* 90 Mich App 251, 255; 282 NW2d 794 (1979). This Court, in *Lewis,* noted specifically that § 3107a was an expansion of the coverage provided by § 3107(b).

Section 3107a is limited by its terms to the temporarily unemployed. Plaintiff views it as at least an indication that the Legislature intended to disregard any subsequent intervening cause of disability. I disagree.

In response to plaintiff's argument that the purpose of the act is best served by the administrative convenience of his interpretation, I note that the purpose of the no-fault act was to insure prompt compensation for economic loss incurred by persons injured in automobile accidents. *Shavers v Attorney General,* 402 Mich 554, 622-623; 267 NW2d 72 (1978); *Gerardi v Buckeye Union Ins Co,* 89 Mich App 90, 94; 279 NW2d 588 (1979).

The purpose of the work-loss provision thus appears to be to provide additional compensation to a no-fault accident victim for earnings he actually would have had but for the injury. Significantly, in the present case, it is stipulated and undisputed that the heart attack disability was unrelated to the automobile accident. Plaintiff would have had the heart attack in any event. Therefore, plaintiff is no worse off from a denial of work-loss benefits than if he had never had the automobile accident, *i.e.,* even assuming no automobile accident, since plaintiff was self-employed, he would not have collected workers' compensation or unemployment benefits as a result of his heart attack; he would have had to rely upon any personal medical insurance which he might have had. The statute does not provide for work-loss benefits from the sole fact that a plaintiff was injured. The statute provides additional benefits to a plaintiff who incurred additional, actual lost earnings as a result of the accident. Work-loss benefits should be paid only for actual economic loss which the plaintiff would have incurred.

Defendant argues that our conclusion is supported by § 3110(4) of the act, MCL 500.3110(4); MSA 24.13110(4), which provides:

"(4) Personal protection insurance benefits payable

for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred."

Defendant reasons that the benefits accrue when an actual work loss is incurred and that since plaintiff would not have incurred any economic work loss after the heart attack, he is not entitled to no-fault work-loss benefits.

Such an argument assumes the result. Section 3110(4) provides for the time at which benefits accrue regardless of the relevance of an intervening cause, and I therefore do not ground my interpretation on that section.

Plaintiff argues that those cases interpreting work loss so as to exclude loss of earning capacity are supportive of his contention that, in the interest of certainty and prompt payment of benefits, the Legislature intended eligibility for benefits to become fixed at the time of the injury. See, *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135; 268 NW2d 317 (1978), *Struble v Detroit Automobile Inter-Ins Exchange,* 86 Mich App 245; 272 NW2d 617 (1978), *Gerardi, supra.* I find, however, that those cases favor defendant because they limit benefits to actual loss, evidencing the intent of the Legislature to cover only losses which are a "direct result" of the injury. The question addressed in those cases was more correctly the issue of how much compensation to give, rather than whether to give it at all.

Regarding policy effects, plaintiff argues that a chaotic situation would result from my conclusion because numerous intervening factors such as assembly-line breakdowns and company bankruptcies would lead to repeated litigation and unreasonable denials of benefits. I believe, however, that once work-loss benefits have begun, the burden

would be upon the insurer to investigate and prove that new circumstances would have precluded a plaintiff from working. An insurer is likely to act only in clear cases of subsequent disabilities. Work-loss benefits would not be terminated due to temporary lay-offs because § 3107a provides for that situation.

Plaintiff's argument for administrative convenience is supported to some extent by the recent Supreme Court case of *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538, 568-569; 302 NW2d 537 (1981), but I read that case as acknowledging the limitation of work loss to "economic" loss consistent with our opinion in the instant case. *Miller* clearly does not address the issue presented here.

In summary, § 3107(b) was enacted to provide for additional benefits to an injured person who incurred actual economic loss. The statute does not provide work-loss benefits from the sole fact that an injury was incurred in an automobile accident. Since it is undisputed that plaintiff's unrelated, subsequent injury would have prevented him from performing work, he incurred no actual economic loss of income which he would have earned for the period subsequent to the heart attack. I note that if plaintiff had recovered from the heart attack within the period of time in which he was still disabled from the automobile accident his work-loss benefits should have been resumed.

I would reverse with no costs, a question of statutory interpretation being involved.