MacDONALD v STATE FARM MUTUAL INSURANCE COMPANY

Docket No. 68139. Argued October 4, 1983 (Calendar No. 6).—Decided
    June 25, 1984. Rehearing denied *post,* 1213.

> Donald A. MacDonald brought an action in the Wayne Circuit
> Court against State Farm Mutual Insurance Company, seeking
> no-fault work-loss benefits for disability related to an automo-
> bile accident. The defendant's motion for a change of venue to
> the Grand Traverse Circuit Court was granted. The Grand
> Traverse Circuit Court, William R. Brown, J., awarded damages
> to the plaintiff. The Court of Appeals, R. B. Burns, P.J., and
> T. M. Burns, J. (Cynar, J., dissenting), affirmed (Docket No.
> 51725). The defendant appeals, arguing that because the plain-
> tiff suffered a second injury, a heart attack unrelated to the
> accident, which rendered him unable to return to work
> throughout and beyond the period of disability related to the
> accident, it is not liable to pay benefits.
>
> In an opinion by Justice Brickley, joined by Justices Kav-
> anagh, Levin, and Ryan, the Supreme Court *held:*
>
> No-fault work-loss benefits compensate a person injured in an
> automobile accident for income that would have been received
> had the accident not occurred. Where a person suffers an
> unrelated injury after the accident and is rendered unable to
> work, eligibility for work-loss benefits ceases because no income
> would have been earned even if the accident had not occurred.
> Nor does an unrelated injury render the person eligible to
> receive work-loss benefits as a person who is temporarily unem-
> ployed because there is no income from work or its equivalent
> to lose.
>
> 1. A no-fault insurer is liable to pay benefits for income a
> person injured in an automobile accident would have per-
> formed during the first three years after the date of the
> accident had no injury occurred. In this case, the plaintiff
> would have worked for two weeks after the date of the acci-
> dent, until the date of his heart attack. After that date he

REFERENCE FOR POINTS IN HEADNOTES
[1-5] 7 Am Jur 2d, Automobile Insurance § 361.

would have earned no wage even if the accident had not occurred. Therefore, solely under that provision of the no-fault statute governing payment of work-loss benefits, the plaintiff is ineligible to receive benefits after the date of his heart attack.

2. A person who is temporarily unemployed at the time of an accident or during the period of disability is eligible under the statute to receive work-loss benefits based on the income earned during the last month of full-time employment preceding the accident. The phrase "temporarily unemployed" refers to the unavailability of employment, not the physical inability to perform work. A person who becomes disabled at some time subsequent to an automobile accident for reasons unrelated to the accident is not temporarily unemployed, and thus work-loss benefits are unavailable because there is no income from work or its equivalent that is lost. In this case, the plaintiff was not temporarily unemployed within the meaning of the no-fault act and is ineligible to receive work-loss benefits on that basis.

Reversed.

Justice Cavanagh, joined by Chief Justice Williams and Justice Boyle, dissenting, would hold that no-fault work-loss benefits paid because of a disability related to an automobile accident may not be withdrawn because the claimant sustains a subsequent independent disability resulting in an inability to work, so long as the injuries attributable to the accident in themselves prevent the claimant from working.

1. A no-fault insurer is liable to pay personal protection insurance benefits for the first three years after the date of an accident for loss of income from work an insured worker would have performed had injuries in an automobile accident not been sustained. At the time of the accident, the worker must have been employed, and there must have been a causal relationship between the injuries sustained as a result of the accident and the inability to engage in gainful employment. As long as the claimant's injuries from the accident continue to result in an inability to work, an actual loss is incurred and work-loss benefits are payable. The fact that a second, independent disability also precludes the claimant from working does not break the causal relationship between the accident and the work loss.

2. The provision in the no-fault act for payment of work-loss benefits to a worker who at the time of an accident is, or during a period of disability becomes, temporarily unemployed because of a lack of available employment does not apply in cases such as this case where the claimant, already unemployed

because of disabling injuries sustained in an accident, is unable
to work because of a second unrelated disability.
108 Mich App 705; 310 NW2d 848 (1981) reversed.

Opinion of the Court

1. Insurance — No-Fault — Work-Loss Benefits — Second
Disability.

No-fault work-loss benefits compensate a person injured in an
automobile accident for income that would have been received
had the accident not occurred; where a person suffers an
unrelated injury after the accident and is rendered unable to
work, eligibility for work-loss benefits ceases because no income
would have been earned even if the accident had not occurred
(MCL 500.3107[b]; MSA 24.13107[b]).

2. Insurance — No-Fault — Work-Loss Benefits — Second
Disability.

A person who is temporarily unemployed at the time injuries are
received as a result of an automobile accident or who becomes
unemployed during the period of disability is eligible for no-
fault work-loss benefits for loss of income from work the
injured person would have performed if he had not been
injured; however, where an intervening event renders the
injured person unable to work regardless of the accident, work-
loss benefits are not recoverable (MCL 500.3107[b], 500.3107a;
MSA 24.13107[b], 24.13107[1]).

Dissenting Opinion by Cavanagh, J.

3. Insurance — No-Fault — Work-Loss Benefits — Second
Disability.

No-fault work-loss benefits paid because of a disability related to
an automobile accident may not be withdrawn because the
claimant sustains a subsequent independent disability resulting
in an inability to work, so long as the injuries attributable to
the accident in themselves prevent the claimant from working
(MCL 500.3107[b]; MSA 24.13107[b]).

4. Insurance — No-Fault — Work-Loss Benefits — Second
Disability.

To be eligible to receive no-fault work-loss benefits, a claimant
must have been employed at the time of the accident which
resulted in injuries, and there must have been a causal rela-
tionship between the injuries and the claimant's inability to
work; the fact that a second independent disability also pre-

cludes the claimant from working does not break the causal
relationship (MCL 500.3107[b]; MSA 24.13107[b]).

5. Insurance — No-Fault — Work-Loss Benefits — Second
     Disability.

   The provision in the no-fault act for payment of work-loss benefits
   to a worker who, at the time of an accident, is, or during a
   period of disability becomes, temporarily unemployed because
   of a lack of available employment does not apply in cases
   where the claimant, already unemployed because of disabling
   injuries sustained in an accident, is unable to work because of a
   second unrelated disability (MCL 500.3107a; MSA 24.13107[1]).

*Robb, Dettmer, Messing & Thompson, P.C.* (by
*George R. Thompson),* for the plaintiff.

*Willingham, Coté, Hanslovsky, Griffith & Fores-
man, P.C.* (by *Frederick M. Baker, Jr.),* for the
defendant.

Amici Curiae:

*Dickinson, Mourad, Brandt, Hanlon & Becker*
(by *Daniel R. Siefer)* for Auto Club Insurance
Association.

*Lopatin, Miller, Freedman, Bluestone, Erlich,
Rosen & Bartnick* (by *Richard E. Shaw)* for Michi-
gan Trial Lawyers Association.

Brickley, J. This case presents the question
whether a person receiving work-loss benefits un-
der the no-fault act, MCL 500.3101 *et seq.;* MSA
24.13101 *et seq.,* may continue to receive those
benefits despite having suffered an unrelated heart
attack which independently renders the person
unable to work. The Court of Appeals held that
statutory entitlement to work-loss benefits contin-
ued in such a situation. 108 Mich App 705; 310
NW2d 848 (1981). We reverse.

The parties have stipulated to the following facts:

"This is an action brought by plaintiff Donald A. MacDonald seeking first party benefits under the Michigan no-fault insurance act from his insurer, State Farm Mutual Insurance Company.

"Plaintiff, a 56-year-old self-employed carpenter, while in the course of driving his vehicle, insured through State Farm Policy No. 4650-286-821-228, was involved in a single-car accident in Kalkaska County, Michigan. The date of the occurrence was November 10, 1976.

"From the accident plaintiff received injuries to his neck and shoulders from which he was disabled from gainful employment as defined under the Michigan no-fault insurance act for a period of 28 months.

"Plaintiff, during the pendency of his disability resulting from the automobile accident, was subsequently disabled as a result of the unrelated myocardial infarction which occurred November 25, 1976; that disability continues as of this point in time.

"Either occurrence acting independently of the other would give plaintiff a work-loss disability.

\* \* \*

"The plaintiff claims he is entitled to work-loss benefits pursuant to § 3107(b) for the period of disability causally related to the automobile accident.

"The defendant claims plaintiff is only entitled to work-loss benefits pursuant to § 3107(b) from the date of the automobile accident to the date of the subsequent disability, in this case being approximately 15 days."

Resolution of this case is dependent on the meaning of two sections of the no-fault act, § 3107(b) and § 3107a.

Section 3107(b) provides that a no-fault insurer is liable to pay benefits for:

"Work loss consisting of loss of income from work an

injured person would have performed during the first 3 years after the date of the accident if he had not been injured".

If § 3107(b) stood alone, work-loss benefits would clearly be unavailable to plaintiff for the period after his heart attack. Our no-fault act is patterned after the Uniform Motor Vehicle Accident Reparations Act, and § 3107(b) of our act, in relevant part, is virtually identical to § 1(a)(5)(ii) of that act. See 14 ULA, Civil Procedural & Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, pp 50, 54. As we have explained previously, by adopting the language of such a model act, it is evident that the Legislature "was cognizant of, and in agreement with, the policies which underlie the model acts' language". *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538, 559; 302 NW2d 537 (1981). The drafter's comments to § 1(a)(5) of the UMVARA, and by extension to § 3107(b) of the no-fault act, are in part, as follows:

" 'Work loss', as are the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity. Thus, an unemployed person suffers no work loss from injury until the time he would have been employed but for his injury. On the other hand, an employed person who loses time from work he would have performed had he not been injured has suffered work loss * * *. Work loss is not restricted to the injured person's wage level at the time of injury. For example, an unemployed college student who was permanently disabled could claim loss, at an appropriate time after the injury, for work he would then be performing had he not been injured. Conversely, an employed person's claim for work loss would be appropriately adjusted at the time he would have retired from his employment."

A reading of both the clear language of § 3107(b)

and the drafter's comment to the uniform act leads us to conclude that work-loss benefits are available to compensate only for that amount that the injured person would have received had his automobile accident not occurred. Stated otherwise, work-loss benefits compensate the injured person for income he would have received but for the accident. In the present case, plaintiff would have worked and earned wages for two weeks, until the date of his heart attack. After that date plaintiff would have earned no wage even had the accident not occurred and, therefore, is ineligible for work-loss benefits after that date under § 3107(b).

The meaning of § 3107(b), however, does not end our inquiry. Plaintiff contends, and the Court of Appeals found, that plaintiff had an independent statutory right to recover work-loss benefits under § 3107a of the no-fault act. We find that § 3107a does not support that position.

Section 3107a was added to the no-fault act by 1975 PA 311, and provides:

"Subject to the provisions of section 3107(b), work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident."

It was added to the no-fault act for the reason that

"[the lack of a concise definition of loss of income in § 3107(b)] has given rise to certain problems in connection with persons who are seasonally employed or temporarily unemployed as a result of lay-offs, and who are disabled as a result of an auto accident. In the case of a worker who is unemployed at the time of an accident or during the period of disability, the law might be construed as providing for no work loss benefits since the

worker would have had no income at that time, had he/
she not been injured. In addition, disabled workers are
not entitled to unemployment compensation since bene-
fits are not payable to a person who is unable to work.
An unemployed worker who is disabled in an auto
accident may thus find him/herself without benefits of
either sort." Analysis, HB 4221, November 21, 1975.

Although § 3107a was added to the no-fault act
to allow temporarily unemployed persons to re-
cover work-loss benefits, we cannot find that
§ 3107a provides an independent source of benefits
for plaintiff. Section 3107a identifies an amount
which is deemed by that section to be the work
loss for temporarily unemployed persons. It allows
persons temporarily unemployed at the time of an
automobile accident to recover benefits notwith-
standing that they have no existing wage, and it
allows those already receiving work-loss benefits to
continue receiving benefits for those temporary
periods when they would have had no wage had
the accident not occurred. But § 3107a does not
expressly state that persons unable to work for
physical reasons are temporarily unemployed, and
we cannot read such a meaning into the statute.

The phrase "temporarily unemployed", it is evi-
dent to us, refers to the unavailability of employ-
ment, not the physical inability to perform work.
The legislative analysis of HB 4221 reveals a
legislative concern with those who but for their
disability could have received unemployment com-
pensation as a substitute income. That concern
evaporates with those already disabled, who lose
no unemployment compensation when they receive
a second disabling injury, and with those who
suffer a second disability after being disabled in an
automobile accident.

In short, those who are temporarily unemployed

in the colloquial sense by a disability unrelated to an automobile accident are not "temporarily unemployed" in the statutory sense because they have no income from work or its equivalent to lose. Benefits for "work loss", therefore, are unavailable.

Our result is consistent with the overall purpose of the no-fault act, "to accomplish the goal of providing an equitable and prompt method of redressing injuries in a way which made the mandatory coverage affordable to all motorists". *Tebo v Havlik*, 418 Mich 350, 366; 343 NW2d 181 (1984). That goal could hardly be accomplished with an interpretation which required automobile insurers to pay work-loss benefits to persons who would be disabled from working regardless of whether there was an automobile accident. And notwithstanding plaintiff's contention to the contrary, our interpretation of §§ 3107(b) and 3107a will lead to no less prompt awards or any greater administrative morass than was contemplated in the creation of the no-fault system. The act already provides for the periodic examinations of claimants and requires payment by the insurer only as the work loss to the claimant accrues. See §§ 3110(4), 3142(1), 3151. Our decision today will merely allow insurers to use the act as it was intended and avoid paying compensation not due the claimant.

Reversed.

KAVANAGH, LEVIN, and RYAN, JJ., concurred with BRICKLEY, J.

CAVANAGH, J. *(dissenting).* The question presented in this case is one of first impression in Michigan. Although we would affirm the Court of Appeals holding that the plaintiff is entitled to continued work-loss benefits during the period of

his disability related to the car accident, despite the subsequent disabling heart attack, we would do so for different reasons.

Unlike the Court of Appeals, we do not reach our conclusion on the basis of the language in § 3107a because we believe that that statute is inapplicable to the present situation. The legislative purpose in enacting § 3107a was to address a problem created by the requirement in § 3107(b) that work-loss benefits must consist of payments for loss of income from work an injured person would have performed had the car accident not occurred, thus implying that the injured person has to be employed at the time of the car accident. As the legislative analysis of the bill which became § 3107a stated:

"This [lack of a concise definition of 'loss of income' in the no-fault law] has given rise to certain problems in connection with persons who are seasonally employed or temporarily unemployed as a result of layoffs, and who are disabled as a result of an auto accident. In the case of a worker who is unemployed at the time of an accident or during the period of disability, the law might be construed as providing for no work loss benefits since the worker would have had no income at that time, had he/she not been injured. In addition, disabled workers are not entitled to unemployment compensation since benefits are not payable to a person who is unable to work. An unemployed worker who is disabled in an auto accident may thus find him/herself without benefits of either sort." Analysis, HB 4221, November 21, 1975.

It is evident that § 3107a was enacted to provide work-loss benefits for the insured worker who is temporarily unemployed at the time of the accident because of a lack of available employment or who becomes temporarily unemployed during the

period of his disability related to a car accident because of the foreclosure of available employment, as in cases of a strike, a layoff, or a plant closing. It makes no sense to us to conclude that the Legislature meant the "temporarily unemployed" language in § 3107a to refer also to someone who, although already unemployed because of disabling injuries from a car accident, is unable to work because of a second unrelated disability. Otherwise, one would become, in effect, re-unemployed on the same basis (*i.e.,* because of being disabled) when a subsequent, independent disability occurs—a redundant designation which we do not believe the Legislature intended to create.

Therefore, we conclude that § 3107a applies only to a person who, at the time of disability occasioned by a car accident, is or during that disability becomes temporarily unemployed because of a lack of available employment. Since § 3107a does not apply to the facts of the case before us, in which the plaintiff was not temporarily unemployed within the meaning of § 3107a during any time period relevant to our determination, we turn our attention to § 3107(b).

Section 3107(b) authorizes the payment of work-loss benefits for work an injured claimant would have performed during the first three years after the date of the accident if the accident had not occurred. We interpret this section to require that the claimant be employed at the time of the car accident and that there be a causal relationship between the injuries the claimant sustains from the car accident and the resulting inability to engage in gainful employment.

We believe that this interpretation is consistent with the statutory scheme of the no-fault act and the policies upon which it is based. It is because

§ 3107(b) requires that the insured be employed at the time of the car accident, *i.e.,* payment is for work which would have been performed had the accident not occurred, that the Legislature passed § 3107a in order to extend the eligibility for work-loss benefits to those who were employable but temporarily unemployed at the time of the accident. The "would have performed * * * if he had not been injured" language in § 3107(b) also indicates the Legislature's intent that there be a causal relationship between the car accident and the resulting inability to work. This causal relationship is not in the form of an exclusive "but for" relationship because the insured claimant may be prevented from working for more than one reason. Section 3107a covers the situation wherein the insured is also precluded from working because of a lack of available employment. We do not believe that the Legislature intended that insured claimants injured in a car accident who suffer a subsequent, independent disability which precludes them from working be treated differently than insured claimants injured in a car accident who subsequently find their prior employment unavailable. As long as the car accident injuries, in themselves, render the insured claimant unable to work, the causal relationship required in § 3107(b) is met.

Contrary to the defendant's contention, we do not think that this interpretation of § 3107(b) conflicts with §§ 3110(4), 3142(1), or 3151. MCL 500.3110(4); MSA 24.13110(4), MCL 500.3142(1); MSA 24.13142(1), MCL 500.3151; MSA 24.13151.

Section 3151 provides as follows:

"When the mental or physical condition of a person is material to a claim that has been or may be made for past or future personal protection insurance benefits,

the person shall submit to mental or physical examination by physicians. A personal protection insurer may include reasonable provisions in a personal protection insurance policy for mental and physical examination of persons claiming personal protection insurance benefits."

Sections 3110(4) and 3142(1) provide that personal protection benefits are payable as the loss accrues, which may be at a different time than when the injury occurs. For example, had the plaintiff been able to work for a period of time after the car accident before his injuries from the accident rendered him unable to work, the workloss benefits would be payable from the date he stopped working rather than the date of the car accident. However, the fact that § 3151 requires a periodic evaluation of whether an actual work loss is being incurred because of the accident is not inconsistent with our interpretation of § 3107(b). As long as the plaintiff's injuries from the car accident continue to result in his inability to work, an actual work loss is being incurred and workloss benefits are payable. Again, the fact that a second, independent disability also precludes him from working does not break the causal relationship between the car accident and the actual work loss suffered as a result of it.[1]

This statutory interpretation is consistent with the policies behind the no-fault act. This Court has frequently pointed out that the purpose of the no-fault system is to provide assured, adequate, and prompt compensation for insured claimants in-

---

[1] In any event, it is important to remember that defendant has stipulated that plaintiff was disabled as a result of the car accident at the time of his heart attack. Defendant has also stipulated as to the length of plaintiff's accident-related disability. Thus, concerns for plaintiff's continuing physical condition and the requirements of § 3151 are not material to these facts.

jured in accidents caused by motor vehicles. *Citizens Ins Co of America v Tuttle,* 411 Mich 536, 545; 309 NW2d 174 (1981); *Shavers v Attorney General,* 402 Mich 554, 578; 267 NW2d 72 (1978). In order to accomplish this, the no-fault act partially abolished tort liability for motor vehicle accidents and substituted the availability of personal protection insurance benefits. This is what the claimant is insured for and this is what the insurer should expect to be liable for—economic loss resulting from injuries sustained in a car accident. A subsequent, fortuitous event which also precludes the injured claimant from working should not relieve the insurer of its obligation to pay for what has been insured against, the inability to work because of the injuries related to the car accident. Otherwise, the legislative purpose in providing the *quid pro quo* of the exchange of personal protection insurance benefits for the restriction on tort liability would be undermined; the injured insured claimant would be both unable to sue for economic damages and unable to collect no-fault insurance benefits despite the fact that there has been economic loss directly caused by injuries received in a car accident.[2]

In addition, this Court has noted that:

"The [no-fault] act is designed to minimize adminis-

---

[2] Defendant also claims that its position is supported by the comments to the corresponding sections of the Uniform Motor Vehicle Accident Reparations Act. See 13 Uniform Laws Annotated 358, 362; 14 Uniform Laws Annotated 41, 53-56. However, we do not read those comments as supporting defendant's position. In addition, it is important to note: (1) that the corresponding provisions of the uniform act are not identical to the sections of the no-fault act with which we are concerned, and (2) that this Court is interpreting state statutes enacted by the state Legislature, not the uniform act as adopted by its drafters. Accordingly, we would, as we must, give effect to our Legislature's intent, not to the intent of the Commissioners on Uniform State Laws.

trative delays and factual disputes that would interfere with achievement of the goal of expeditious compensation of damages suffered in motor vehicle accidents." *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538, 568; 302 NW2d 537 (1981).

We agree with the Court of Appeals that if a motor vehicle accident victim is entitled to work-loss benefits only for those days on which the accident injuries alone prevent him from working, then an administrative morass would result from trying to weed out those days in which the victim was prevented from working because of other additional causes, such as bad weather, an unrelated illness, or a conflicting commitment. This would clearly inhibit the no-fault act's goal of prompt reparation for economic losses.

We would hold that work-loss benefits paid to an insured claimant under § 3107(b) of the no-fault act on the basis of a disability related to a car accident may not be withdrawn where the claimant sustains a subsequent independent disability which also renders the claimant unable to work. As long as the car accident injuries in themselves prevent the claimant from working, work-loss benefits are payable under § 3107(b).

WILLIAMS, C.J., and BOYLE, J., concurred with CAVANAGH, J.