EDWIN J. LORENZO, Plaintiff-Appellant, *v.* STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation, and MICHAEL MIGITA; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10, Defendants-Appellees

NO. 11570

(CIVIL NO. 9518)

APRIL 22, 1987

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, JJ., AND
INTERMEDIATE COURT OF APPEALS
CHIEF JUDGE JAMES S. BURNS,
IN PLACE OF NAKAMURA, J., RECUSED

OPINION OF THE COURT BY HAYASHI, J.

Plaintiff-Appellant Edwin J. Lorenzo (hereinafter "Appellant") appeals from the order granting partial summary judgment to Defendants-Appellees State Farm Fire and Casualty Company and its employee Michael Migita (hereinafter collectively "State Farm"). Appellant contends that the trial court erred in ruling that it was proper for State Farm to withdraw Appellant's no-fault work loss benefits after he suffered a subsequent disabling heart attack unrelated to the car accident. We must decide whether no-fault work loss benefits may be withdrawn from an insured party receiving such benefits under his automobile insurance policy and Hawaii no-fault law, Hawaii Revised Statutes (hereinafter "HRS") § 294-2(10)(C) (1976), where the insured suffers a subsequent heart attack unrelated to the car accident, which independently renders him unable to work. The question presented in this case is one of first impression in Hawaii. Although this is a close question, we hold that statutory entitlement to no-fault work loss benefits may not be withdrawn in such a situation.

I.

The facts are as follows. On June 29, 1977, Appellant suffered injuries to his neck, back, right shoulder and arm, during an automobile accident in Hilo. Prior to the automobile accident, Appellant worked as a commercial fisherman. Due to the injuries received, Appellant claimed that he was no longer able to continue work as a commercial fisherman. Appellant was determined to be permanently disabled to the extent that his employability in practical terms was nonexistent. Appellant thus filed a claim for loss of income, and pursuant to the terms of his no-fault automobile in-

surance policy, State Farm paid Appellant monthly work loss benefits.

Beginning in January of 1981 and extending through August 1983, Appellant was hospitalized at various times for treatment relating to his heart problems. On August 8, 1982, Appellant suffered a severe heart attack. The doctors that treated Appellant, however, determined that his heart attack was not caused by the earlier car accident. On December 12, 1983, State Farm withdrew Appellant's no-fault work loss benefits, on the basis that Appellant was not entitled to such benefits after his heart attack and its disabling effects.

On February 23, 1984, Appellant filed suit against State Farm, alleging that the withdrawal of his no-fault work loss benefits was improper. By way of cross-motions for partial summary judgment, the trial court was presented with the issue of the appropriateness of State Farm's withdrawal of Appellant's no-fault work loss benefits. After a hearing, the trial court granted State Farm's motion on November 1, 1985, ruling that the withdrawal of work loss benefits after the disabling heart attack was proper.

Appellant filed a notice of appeal after the trial court granted his motion for interlocutory appeal. This court, however, dismissed Appellant's appeal because the trial court's order granting his interlocutory appeal did not specify the reasons for doing so. *Mason v. Water Resources International,* 67 Haw. 510, 694 P.2d 388 (1985). The trial court then reinstated its original order granting State Farm's motion for partial summary judgment and denying Appellant's motion, and also provided specific reasons for granting Appellant's second motion for interlocutory appeal. Appellant thereafter filed this notice of appeal.

## II.

Appellant contends that the trial court erred in denying his motion for partial summary judgment and granting State Farm's cross motion because it was improper for State Farm to withdraw Appellant's no-fault work loss benefits, despite his suffering a subsequent and unrelated heart attack, which independently rendered Appellant unable to work. In support of his contention, Appellant

relies on: (1) the language of his no-fault automobile policy; (2) the work loss benefits provision under Hawaii's no-fault automobile insurance law, HRS § 294-2(10)(C); and (3) the legislative history and public policy considerations behind Hawaii's no-fault laws.

Appellant's no-fault automobile insurance policy specifically provides for the payment of work loss benefits.[1] The language of Appellant's policy clearly provides that the only conditions for work loss benefits are an "inability of the eligible injured person to engage in available and appropriate gainful activity" and that the injury is "caused by an accident arising out of the . . . use of a motor vehicle." State Farm does not contest that Appellant meets both requirements.

Resolution of this case, therefore, is dependent on the meaning of the pertinent Hawaii no-fault laws. HRS § 294-2 in relevant part then provided:

> (10) "No-fault benefits" with respect to any accidental harm . . . means:

> .  .  .  .

> (C) Monthly earnings loss measured by an amount equal to the lesser of:
> (i) $800 per month, or
> (ii) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity.

Appellant's no-fault policy merely tracks this statutory language.

---

[1] The policy reads in pertinent part (emphasis added):

COVERAGE P — BASIC NO-FAULT COVERAGE
The company will pay, *in accordance with the Hawaii no-fault law,* no-fault benefits on account of accidental harm sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance, or use of a motor vehicle as a vehicle.

NO-FAULT BENEFITS
No-fault benefits shall consist of and be defined as:

.  .  .  .

(c) Work Loss — *Loss of monthly earnings resulting from the inability of the eligible injured person to engage in available and appropriate gainful activity* or a decrease in earning capacity because of accidental harm.

State Farm, however, relies on HRS § 294-2(7)(C) to support its contention that there is a condition of employability during the period for which benefits are sought. HRS § 294-2(7) in pertinent part reads:

(7) "Monthly earnings" means:

. . . .

(B) In the case of a person regularly self-employed, one-twelfth of the average annual earnings before state and federal income taxes at the time of injury or death;

(C) In the case of an unemployed person or a person not regularly employed or self-employed, one-twelfth of the antici-pated annual compensation before state and federal income taxes of such person paid from the time such person would reasonably have been expected to be regularly employed.

This reliance is misplaced. It is clear from a plain reading of § 294-2(7)(C) that the additional condition of employability was intended for those claimants that were unemployed or not reg-ularly employed. Appellant was not a subsection (C) claimant, but rather a subsection (B) claimant. There is no similar language in subsection (B) regarding a condition of employability. The legisla-tive history of HRS §§ 294-2(10)(C) and 294-2(7) also does not support State Farm's position.[2]

In essence, State Farm argues that the no-fault statutes do not entitle a person to work loss benefits for a period where he could not have possibly worked. Although State Farm's argument is at first glance appealing, policy considerations run contrary to this position. State Farm relies heavily on doctor's testimony that even if

---

[2] A 1973 Conference Committee Report stated:

In addition, all wage loss would be paid until such time as the injured person could resume available and appropriate gainful activity, up to the standard or maximum limit of every no-fault policy . . . . Benefits would also be paid for loss of future anticipated earnings or for impairment of earning capacity resulting from injuries sustained in an automobile accident, up to the standard or maximum limit of every no-fault policy.

Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1220; Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 636. *See Mizoguchi v. State Farm Mutual Insurance Co.*, 66 Haw. 373, 379, 663 P.2d 1071, 1075 (1983). There is no evidence that the legislature intended to allow subsequent disabilities to cut off work loss benefits.

Appellant had no pre-existing disability, he would have been independently and totally disabled because of his August 1982 heart attack. This position, however, ignores the fact that no-fault work loss laws were intended to compensate an injured person for income he would have earned if he had not been injured in a car accident.

State Farm attempts to use the no-fault statutes as a sword to sever Appellant's entitlements due to a subsequent and independent disability, although Appellant was earlier deemed unable to work from the accidental harm suffered in an automobile accident. Where a claimant is already disabled and receiving work loss benefits, a subsequent independent disability does not undo the damage received from an earlier car accident.[3]

State Farm relies primarily on a Michigan Supreme Court decision in *MacDonald v. State Farm Mutual Insurance Co.*, 419 Mich. 146, 350 N.W.2d 233 (1984). The Michigan Supreme Court held in a sharply divided 4-3 decision that discontinuing an insured's work loss benefits because of a subsequent disabling heart attack was statutorily proper. The *MacDonald* court reasoned that work loss benefits may properly be cancelled because the claimant would not be able to work due to his disabling heart attack, regardless of whether there was an earlier automobile accident. This court, however, is free to adopt its own position on this question. Although *MacDonald* involved closely similar facts, its holding can be distinguished due to dissimilar no-fault work loss provisions.

Moreover, the analysis provided by the dissent in *MacDonald* is more persuasive. The three-member dissent agreed with the decision of its appeals court below which held that work loss benefits should not be withdrawn although the insured party sustains a subsequent disability that would have independently rendered the insured unable to work. The dissent first pointed out that their statutory interpretation was consistent with the policies behind the no-fault act, and then provided the following analysis which is helpful in this case:

---

[3] We do not reach the question of whether a prior independent disability would prevent an insured person from receiving no-fault work loss benefits.

This is what the claimant is insured for and this is what the insurer should expect to be liable for — economic loss resulting from injuries sustained in a car accident. *A subsequent, fortuitous event which also precludes the injured claimant from working should not relieve the insurer of its obligations to pay for what has been insured against, the inability to work because of the injuries related to the car accident.* Otherwise, the legislative purpose in providing the quid pro quo of the exchange of personal protection insurance benefits for the restriction on tort liability would be undermined; the injured insured claimant would be both unable to sue for economic damages and unable to collect no-fault insurance benefits despite the fact that there has been economic loss directly caused by injuries received in a car accident.

*Id.* at 159, 350 N.W.2d at 238-39 (Cavanagh, J., dissenting) (emphasis added).

On the other hand, State Farm argues that work loss benefits are governed by a "but for" rule as the majority in *MacDonald* opined. Under this approach, work loss benefits compensate the injured person only for income he would have received but for the accident. State Farm points to the commentaries to the Uniform Motor Vehicle Accident Reparations Act in support of such an approach.[4] The commentaries, however, do not explicitly provide for the withdrawal of work loss benefits after it has been determined that an insured would not have suffered work loss earnings "but for" his injury. Although the commentaries suggest that the reduction or withdrawal of work loss benefits are justified under

---

[4] The commentaries provide:

"Work loss," as are the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity. Thus, an unemployed person suffers no work loss from injury until the time he would have been employed but for his injury. On the other hand, an employed person who loses time from work he would have performed had he not been injured has suffered work loss. . . . *Work loss is not restricted to the injured person's wage level at the time of injury.* For example, an unemployed college student who was permanently disabled could claim loss, at an appropriate time after the injury, for work he would then be performing had he not been injured. *Conversely, an employed person's claim for work loss would be appropriately adjusted at the time he would have retired from his employment.*

Unif. Motor Vehicle Accident Reparations Act § 1(a)(5), 14 U.L.A. Commissioners' Comment at 54 (1980) (emphasis added).

certain circumstances, we do not find that the facts of this case fall within those circumstances.

State Farm's reliance on *Mizoguchi v. State Farm Mutual Insurance Co.,* 66 Haw. 373, 663 P.2d 1071 (1983), is also not helpful. State Farm cites to this court's holding in *Mizoguchi* that work loss benefits must be "provable." *Id.* at 381, 663 P.2d at 1076. The issue of provability is not before this court. The real issue is whether a subsequent independent disability may cut off Appellant's earlier "proved" work loss earnings from the injury sustained in the automobile accident.

Appellant's no-fault automobile policy, the no-fault work loss statutes and its legislative history, plus public policy considerations dictate that no-fault work loss benefits may not be withdrawn from Appellant where he suffered a subsequent heart attack unrelated to the car accident, which independently rendered him unable to work.

Reversed.

*Valta A. Cook (Andrew S. Iwashita* with him on the brief; *Case, Kay & Lynch,* of counsel), for Plaintiff-Appellant.

*Lyle Y. Harada (James Kawashima* with him on the brief; *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel), for Defendants-Appellees.