951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lisa MINOTT, Plaintiff-Appellant,
v.
GENERAL ELECTRIC CREDIT AUTO LEASE, INC., Defendant,
and
MERIDIAN MUTUAL INSURANCE COMPANY, Defendant-Appellee.
 No. 91-1182.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1991.
 
 1
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and DUGGAN, District Judge.*
 
 
 2
 DUGGAN, District Judge.
 
 
 3
 Plaintiff-appellant, Lisa Minott ("Minott"), appeals the district court's grant of summary judgment in favor of defendant-appellee, Meridian Mutual Insurance Company ("Meridian"), as to her claims against Meridian set forth at Counts II and III of her complaint. For the reasons which follow, the district court's decision is affirmed.
 
 
 4
 * Minott worked as a flagperson for a road construction company directing traffic through construction sites. In June, 1988, she was injured in two "hit-and-run" accidents while on the job. Despite these accidents, Minott continued working at her job until September, 1988. She did not report the accidents to Meridian or the police until September, October, or November, 1988.
 
 
 5
 On December 19, 1989, Minott brought suit against Meridian alleging two claims: that she was entitled to uninsured motorist benefits and that she was entitled to Michigan no-fault wage loss benefits.
 
 
 6
 Meridian filed a motion for summary judgment on these claims, contending that Minott was not entitled to uninsured motorist benefits because she had failed to comply with the insurance policy's notice requirements. Meridian also argued that Minott's claim for Michigan no-fault benefits should be denied because such benefits were not available as Minott's workers' compensation benefits were large enough to preclude any recovery for such benefits.
 
 
 7
 The district court granted Meridian's motion for summary judgment.
 
 II
 
 8
 * Minott argues that the district court erred in granting summary judgment on the issue of whether or not notice was timely given. She contends that, under Michigan law, failure to give notice within the time specified in an insurance policy will not bar a claim under the policy if the notice was given within a reasonable time. Minott further argues that untimely notice will not bar a claim unless the insurer can show prejudice resulting from the untimely notice.
 
 
 9
 Meridian, relying primarily on Lehr v. Professional Underwriters, 296 Mich. 693 (1941), argues that the insurance policy's notice requirement is clear and unambiguous and that, as a result, it should be enforced. Meridian also argues that Michigan law does not require an insurer to show prejudice resulting from an insured's failure to meet a policy notice provision.
 
 
 10
 The insurance policy which covers Minott provides a notice provision for hit-and-run accidents which states in relevant part:
 
 
 11
 The term "hit-and-run automobile" means an automobile which causes bodily injury to an Insured arising out of physical contact of such automobile with the Insured or with an automobile which the Insured is occupying at the time of the accident, provided: (1) There cannot be ascertained the identity of either the operator or the owner of such "hit-and-run automobile"; (2) The Insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the Company within 30 days thereafter a statement under oath that the Insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; ....
 
 
 12
 Minott failed to comply with the policy's 24 hour and 30 day notice requirements. She did not report her claim to Meridian until several months after the two hit-and-run accidents of June, 1988.
 
 
 13
 By statute, Michigan law provides an exception to the time limitations of notice provisions such as the one in the Meridian policy:
 
 
 14
 In such liability insurance policies there shall be ... a provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.
 
 
 15
 M.C.L.A. § 500.3008 (West 1983).
 
 
 16
 Section 3008 applies to the "hit-and-run automobile" provision of the insurance policy applicable to the present matter. See Stine v. Continental Casualty Co., 419 Mich. 89, 106-08 (1984) (section 3008 applies to the notice provisions of an "occurrence" insurance policy, as well as the notice provisions of a "claims made" policy).[1] Therefore, the fact that Minott failed to satisfy the notice requirements of the "hit-and-run automobile" provision does not, by itself, serve to bar her claim. Section 3008 plainly allows for late notification to be made under certain circumstances--if it is made within a reasonable time.
 
 
 17
 However, § 3008 is of no aid to Minott. She has not presented evidence showing that it was not "reasonably possible" for her to give Meridian notice within the prescribed time period of the policy; nor has she presented any evidence that notice was given as soon as was reasonably possible. Minott knew of the accidents in June, 1988. She did not notify Meridian until September, October, or November, 1988.
 
 
 18
 Minott's argument that her failure to comply with the policy's notice requirements should not bar her claim unless Meridian can show prejudice resulting from such failure is unpersuasive. Insurance policy notice provisions which provide that an insured must give notice of a claim or occurrence within a defined time period are strictly enforced under Michigan law.
 
 
 19
 In Continental Studios, Inc. v. American Auto. Ins. Co., 340 Mich. 6 (1954), plaintiff sued its insurer seeking indemnity under an insurance policy issued to it. The policy had a notice provision requiring the insured to give the insurer notice of a loss "at the earliest practical moment, and at all events not later than 15 days after discovery of any fraudulent or dishonest act on the part of any employee by the insured." Id. at 8. The insured did not comply with this requirement. The court affirmed a directed verdict in favor of the insurer, ruling that the notice requirement had to be strictly complied with and that the insured's failure to give timely notice barred it from making a claim under the policy. Id. at 11-12, 14.
 
 
 20
 In Dellar v. Frankenmuth Mut. Ins. Co., 173 Mich.App. 138 (1988), the Michigan Court of Appeals rejected an insured's argument that an insurer must show prejudice resulting to it from an insured's failure to give timely notice before a claim under a policy may be barred for untimely notice, reasoning:
 
 
 21
 [W]e are urged by plaintiff to rule that no insurer may obtain summary disposition of an insured's complaint for failure to file a timely proof of loss unless the insurer pleads and proves prejudice.
 
 
 22
 There are cases which state that mere delay in giving notice under an insurance policy does not work a forfeiture because such notice provisions are construed to require notice within a reasonable time, that prejudice to the insurer is a material element in the determination whether notice was reasonably given, and that the burden is on the insurer to demonstrate such prejudice.
 
 
 23
 However, these cases relate to insurance contracts without specific time limits for notice or proof of loss. A clear line of authority exists contrary to plaintiff's contention where the case involves a policy containing the statutory language requiring proof of loss within sixty days.
 
 
 24
 Clearly, the failure to file a signed and sworn proof of loss within sixty days of the loss bars recovery on a claim without regard to whether the insurer is prejudiced by such failure.
 
 
 25
 Id. at 144-45 (citations omitted).
 
 
 26
 In the cases where the Michigan courts have required an insurer to show prejudice before finding a claim to be barred as untimely, the policies' notice provisions did not set forth a definite time period for the giving of notice. Rather, such policies contained "as soon as practicable" notice requirements. See Wendel v. Swanberg, 384 Mich. 468, 471, 478 (1971); Wehner v. Foster, 331 Mich. 113, 114, 122-23 (1951); Kennedy v. Dashner, 319 Mich. 491, 493, 494-95 (1947). However, where the insurance policy contains a defined time period for notice, Michigan courts have not applied a prejudice requirement. See Continental Studios, supra, Dellar, supra. See also Reynolds v. Allstate Ins. Co., 123 Mich.App. 488, 490-91 (1983) (expressly distinguishing prejudice cases involving "as soon as practicable" policies from cases involving defined notice period policies).
 
 
 27
 In sum, Minott's failure to provide timely notice of the hit-and-run accidents to Meridian bars her claim under the policy for uninsured motorist benefits.
 
 B
 
 28
 With regard to Minott's claim for wage loss benefits,[2] both parties raise arguments similar to the ones presented to the district court.
 
 
 29
 Meridian argues that Minott is not entitled to any wage loss benefits because the amount of workers' compensation she is receiving, over $12,000 per year, is greater than the income she earned when working for the construction company. Meridian supports its argument by pointing out that Minott earned $7,367.78 in 1987 and $4,175.40 in 1988 and therefore any wage loss award would provide compensation significantly in excess of the actual wage loss she suffered.
 
 
 30
 Minott disagrees. She contends that any set off determinations for lost wages should be done on a weekly basis because she only worked twenty-three weeks out of the year for the construction company. For example, Minott estimates her average weekly wage to be $501.88, (less the tax allowance of 15%),[3] for each of the twenty-three weeks. From this, she subtracts her weekly workers' compensation benefits of $245.42 leaving her with a wage loss of $181.18 for each of the twenty-three weeks or a total wage loss of $4,167. Minott, however, fails to include the $245.42 workers' compensation benefits that she received the other twenty-nine weeks of the year ($7,117.00) when she wasn't expected to work.
 
 
 31
 Minott offers no citation to any Michigan case employing her methods of calculation of wage loss benefits.
 
 
 32
 If accepted, Minott's wage loss calculations would provide her with a windfall recovery. As indicated, she receives over $12,000 per year in workers' compensation payments--an amount considerably greater than what she earned while she was working for the construction company.
 
 Under Michigan law:
 
 33
 Personal protection insurance benefits are payable for the following:
 
 
 34
 (b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured....
 
 
 35
 M.C.L.A. § 500.3107 (West 1983). Further, Michigan law provides for a set off of workers' compensation payments from the amount of the wage loss benefits otherwise payable under § 3107(b):
 
 
 36
 Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.
 
 
 37
 M.C.L.A. § 500.3109(1) (West 1983).
 
 
 38
 The purpose of the set off provision of § 3109(1) has been stated as follows:
 
 
 39
 Permitting employees to receive full no-fault benefits is one thing, but permitting such recovery in addition to workers' compensation benefits would be quite another. The Legislature therefore provided that workers' compensation benefits are to be subtracted from no-fault benefits otherwise payable. The provision which requires this subtraction applies to all benefits paid under state or federal law and expresses a legislative decision to forbid double recovery under government programs and to allocate the cost of providing the minimum level of benefits mandated by the no-fault act as much as possible to other sources. The provision requiring set-off appears to be directed to the allocation of costs between insurance systems and the avoidance of double recovery and does not appear to be intended to provide motor vehicle accident victims injured in the course of their employment with less compensation than motor vehicle accident victims not so injured.
 
 
 40
 Great American Ins. Co. v. Queen, 410 Mich. 73, 95 (1980).
 
 
 41
 This concern for protection against "double recovery" ties in with the Michigan Supreme Court's view of the policy behind the wage loss provisions of § 3107(b):
 
 
 42
 " 'Work loss', as are the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity. Thus, an unemployed person suffers no work loss from injury until the time he would have been employed but for his injury. On the other hand, an employed person who loses time from work he would have performed had he not been injured has suffered work loss."
 
 
 43
 MacDonald v. State Farm Ins. Co., 419 Mich. 146, 151 (1984).
 
 
 44
 We believe that the appropriate method of determining whether Minott suffered a wage loss is to determine whether or not, on an annual basis, she, in fact, suffered a loss. Such method of calculation abides by the language of § 3107(b) that wage loss be calculated on the basis of "loss of income from work an injured person would have performed during the first 3 years after the date of the accident." Since there is no dispute that the workers' compensation benefits Minott receives for a year, $12,762.00, exceeds any earnings she expected to receive in a year, she has suffered no wage loss.
 
 III
 
 45
 The decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The auto insurance policy in the present matter is an "occurrence" policy--it generally covers accidents that occur during the policy period
 
 
 [2]
 The statute under which Minott seeks "wage loss" benefits, M.C.L.A. § 500.3107 (West 1983), terms such benefits "work loss." As both parties use "wage loss," this Court shall use "wage loss" in the discussion that follows
 
 
 [3]
 See M.C.L.A. § 500.3107(b) (West 1983)