SPENCER v HARTFORD ACCIDENT AND INDEMNITY COMPANY

Docket No. 109023. Submitted May 10, 1989, at Lansing. Decided August 9, 1989.

Plaintiff, Richard Spencer, was injured, while in the course of his employment with Ypsilanti Township, in an automobile accident and was unable to return to his job. Plaintiff received workers' compensation benefits and also the difference between the amount of his workers' compensation benefits and his base rate of pay pursuant to a collective bargaining agreement between plaintiff's union and the township. Plaintiff filed an action in the Washtenaw Circuit Court against defendant, Hartford Accident and Indemnity Company, the township's no-fault insurer, for recovery of personal injury protection work loss benefits under the no-fault act. Defendant denied liability for work loss benefits claiming plaintiff's receipt of wage continuation benefits prevented him from suffering work loss or, alternatively, that the wage continuation benefits were subject to setoff as either a governmental benefit or as a permissive setoff. Both parties moved for summary disposition and the trial court, William R. Ager, Jr., J., granted summary disposition in plaintiff's favor. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in finding that plaintiff suffered a work loss.

2. Plaintiff's wage continuation benefits do not constitute governmental benefits subject to the mandatary setoff provision of MCL 500.3109; MSA 24.13109.

3. The trial court did not err in finding that plaintiff's wage continuation benefits do not constitute other health and accident coverage within the meaning of the permissive setoff provision of MCL 500.3109a; MSA 24.13109(1), which authorizes a policy containing a coordination-of-benefits clause. The term

REFERENCES

Am Jur 2d, Automobile Insurance §§ 34, 361, 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

"coverage" as used in the statute refers to protection afforded by an insurance policy.

Affirmed.

1. INSURANCE — NO-FAULT — WORK LOSS BENEFITS — WAGE CONTINUATION.

An employed person who loses time from work he would have performed had that person not been injured in an automobile accident has suffered a work loss within the meaning of the work loss benefits provision of the automobile no-fault insurance act even if that person's employer continues his wages under a formal wage continuation plan or as a gratuity (MCL 500.3107[b]; MSA 24.13107[b]).

2. INSURANCE — NO-FAULT — REDUCTION OF BENEFITS.

Benefits provided or required to be provided by the laws of any state or the federal government may be deducted from no-fault personal protection insurance benefits otherwise payable where they serve the same purpose as the no-fault benefits and are provided or are required to be provided as a result of the same accident (MCL 500.3109[1]; MSA 24.13109).

3. INSURANCE — NO-FAULT — COORDINATION OF BENEFITS — "COVERAGE".

The deliberate use of the word "coverage" in the permissive setoff (coordination of benefits) amendment to the no-fault insurance act, when the rest of the no-fault act refers to benefits, clearly indicates that the Legislature intended the deductions and exclusions permitted in the amendment to be limited to other health and accident insurance upon the insured, as opposed to other duplicative "benefits"; the limitation of the amendment to "coverage" evinces an intent to provide unique treatment to health and accident insurance (MCL 500.3109a; MSA 24.13109[1]).

4. INSURANCE — UNIFORM MOTOR VEHICLE ACCIDENT REPARATIONS ACT — NO-FAULT.

The Uniform Motor Vehicle Accident Reparations Act was utilized as source material in the drafting of Michigan's no-fault act; the UMVARA will be looked to for guidance in construing a provision of the no-fault act where the provisions of both acts are virtually identical; where there is an absence of a comparable provision in the no-fault act, it is presumed that the Legislature considered but rejected the proposed language in the uniform act.

*Pear, Sperling, Eggan & Muskovitz, P.C.* (by *Lawrence W. Sperling*), for plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe* and *Anne M. McLaughlin*), for defendant.

Before: McDONALD, P.J., and SULLIVAN and REILLY, JJ.

PER CURIAM. Defendant appeals as of right from an April 30, 1988, order granting summary disposition pursuant to MCR 2.116(C)(10) in favor of plaintiff in this no-fault work loss benefits case.

The facts are not disputed. While in the course of his employment with Ypsilanti Township, plaintiff was injured in an automobile accident, sustaining injuries which prevented him from returning to his job. Following the accident, plaintiff received workers' compensation benefits. In addition, plaintiff also received the difference between the amount of his workers' compensation benefits and his base rate of pay pursuant to a collective bargaining agreement between plaintiff's union and Ypsilanti Township.

Plaintiff filed the instant action against defendant, the no-fault insurer for Ypsilanti Township, for recovery of personal injury protection work loss benefits under the Michigan no-fault act. Defendant denied liability for work loss benefits, claiming plaintiff's receipt of wage continuation benefits prevented him from suffering work loss or, alternatively, that the wage continuation benefits were subject to setoff as either a governmental benefit, pursuant to MCL 500.3109(1); MSA 24.13109(1), or as a permissive setoff, pursuant to the coordination of benefits provision of MCL 500.3109a; MSA 24.13109(1). Each of the parties filed separate motions for summary disposition pursuant to MCR 2.116(C)(10). Following a hearing

on the motions, the trial court issued a written opinion finding in favor of plaintiff.

Defendant now appeals as of right, first claiming plaintiff's receipt of wage continuation benefits pursuant to a collective bargaining agreement precluded plaintiff from suffering an actual work loss under the no-fault act. MCL 500.3107; MSA 24.13107.

However, as another panel of this Court held in *Brashear v DAIIE,* 144 Mich App 667; 375 NW2d 785 (1985), a "work loss" as utilized in § 3107(b) includes situations in which an injured employee loses time from work he would have performed had he not been injured even where his employer continues his wages under a formal wage continuation plan or as a gratuity. *Brashear,* p 671. In the instant case, plaintiff's collective bargaining agreement provided in part:

> Any employee who has completed his probationary period and has been placed on the seniority list as a full-time regular employee, who suffers an injury compensable under the Workmen's Compensation Act after the first week's compensation, shall be paid the difference between his or her base rate of pay and payment received under the provisions of the Act provided the employee provides the employer with a doctor's certification every 45 days of his continued disability. This time shall not be deducted from his accumulated sick leave bank.

As we believe this provision constitutes a formal wage continuation plan, the trial court did not err in finding plaintiff suffered a work loss.

Defendant next contends plaintiff's wage continuation benefits constitute governmental benefits subject to the mandatory setoff provision of MCL 500.3109; MSA 24.13109. We disagree.

The "governmental benefits" setoff provision of MCL 500.3109(1); MSA 24.13109(1) provides as follows:

Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

The purpose of this provision is to eliminate duplicative recovery of benefits and to contain insurance costs. *Moore v Auto Club Ins Ass'n,* 173 Mich App 308; 433 NW2d 355 (1988). The Michigan Supreme Court in *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984), set forth the test for determining whether a state or federal benefit may be deducted under § 3109(1):

We conclude that the correct test is: state or federal benefits "provided or required to be provided" must be deducted from no-fault benefits under § 3109(1) if they:
1) Serve the same purpose as the no-fault benefits, and
2) Are provided or are required to be provided as a result of the same accident.

Thus, it is under this provision that a no-fault insurer may use workers' compensation benefits as a setoff for PIP benefits otherwise payable. See *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980).

Here, defendant contends because plaintiff received the remainder of his wages pursuant to a collective bargaining agreement with a township and MCL 41.2; MSA 5.2 authorizes townships to make all contracts necessary and convenient for the exercise of their corporate powers, the collec-

tive bargaining wage continuation benefits constitute a benefit provided by state law within the meaning of § 3109(1).

Section 3109(1) is clearly limited to benefits "provided under the laws of any state or the federal government." The additional benefits paid in the instant case were not paid pursuant to any state or federal law as required by § 3109, but instead were paid pursuant to a collective bargaining agreement with a local township. Thus, the express language of the statute refutes the applicability of a setoff under the instant circumstances.

In *Krygel v Detroit,* 135 Mich App 187; 353 NW2d 116 (1984), the plaintiff was injured in an automobile accident while in the course of his employment as a Detroit police officer. Pursuant to a collective bargaining agreement between plaintiff's union and the City of Detroit, plaintiff elected to receive City of Detroit charter benefits in lieu of workers' compensation benefits. A panel of this Court affirmed a lower court ruling permitting the no-fault insurer to use the charter benefits as a setoff for PIP benefits otherwise payable. In so ruling, the panel noted the Workers' Disability Compensation Act, MCL 418.161(1)(a); MSA 17.237(161)(1)(a), expressly provided that police and fire department employees working for municipalities with charter provisions proscribing like benefits may elect to take workers' compensation or charter benefits, but not both. Accordingly, the *Krygel* panel reasoned as this provision entitled police and fire employees to workers' compensation or charter benefits, receipt of either is a benefit "required to be provided under state law." *Krygel,* p 191. The instant case is distinguishable in two respects. First, unlike in *Krygel,* here there is no statutory authority providing for the receipt by plaintiff of additional wages pursuant to a collec-

tive bargaining agreement. Secondly, the charter benefits received in *Krygel* were received in lieu of workers' compensation benefits, whereas here, the wage continuation benefits were received in addition to workers' compensation benefits.

Thus, as the remainder of plaintiff's wages were paid pursuant to a collective bargaining agreement, were not required pursuant to any state or federal law, or even any local ordinance, and were not received in lieu of workers' compensation benefits, we do not believe the trial court erred in ruling them inappropriate for setoff under § 3109.

Defendant last claims plaintiff's wage continuation benefits constitute "other health and accident coverage" within the meaning of MCL 500.3109a; MSA 24.13109(1). We disagree.

MCL 500.3109a; MSA 24.13109(1) authorizes a no-fault insurance carrier to offer a policy with a coordination-of-benefits clause:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

In line with this statutory authorization, the instant insurance policy contained a Coordination of Personal Injury Protection endorsement (CA 22 21) which contained the following provision:

> This insurance does not apply to the extent that any amounts are paid or payable for work loss to

or on behalf of such named insured or relative under the provisions of any other insurance, service, benefit or reimbursement plan providing similar direct benefits, without regard to fault, for bodily injury sustained as a result of the operation, maintenance or use, including the loading or unloading, of a motor vehicle.

The purpose of § 3109a is to reduce the cost of no-fault insurance by allowing insurers to offer policies that coordinate benefits with other similar coverages in return for charging a statutorily mandated reduced premium. *Auto-Owners Ins Co v Farm Bureau Mutual Ins Co,* 171 Mich App 46; 429 NW2d 637 (1988). The statutory provision does not permit any and all exclusions, but, rather, limits the permitted exclusions to health and accident coverage on the insured. *Orr v DAIIE,* 90 Mich App 687; 282 NW2d 177 (1979). Thus, the question here to be determined is whether additional wages received pursuant to a collective bargaining agreement represent "other health and accident coverage" within the meaning of § 3109a.

In *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), our Supreme Court construed the language "other health and accident coverage" in § 3109a in determining whether Medicare benefits could be coordinated under this section. The Court noted that, although the rest of the no-fault act referred to "benefits," § 3109a spoke of health and accident "coverage." Following *Orr, supra,* the Court reasoned that, because the word coverage was a word of precise meaning in the insurance industry, it was intended to refer to protection afforded by an insurance policy. Thus, the Court found the Legislature's enactment of § 3109a, which was narrowly limited to "coverage," referred to protection afforded by an insurance policy, or the sum of the

risks assumed by a policy of insurance. *LeBlanc,* p 204. The Court then stated as follows:

> We are also of the view that the Legislature's enactment of § 3109a, which is narrowly limited to "coverage" and which is not expressly confined to private forms of such "coverage," evinces an intent to provide unique treatment to health and accident insurance, as opposed to other perhaps equally duplicative "benefits." [*Id.*]

Accordingly, the *LeBlanc* Court concluded Medicare benefits were "other health and accident coverage" which qualified for § 3109a's permissive setoff.

In *Orr, supra,* cited in *LeBlanc,* the plaintiff's insurance policy contained a coordinated benefits clause which provided, in pertinent part, as follows:

> In consideration of the reduced premium for personal protection insurance, . . . sums paid or payable to the named insured . . . shall be reduced by any amount paid or payable under any valid and collectable . . . employer paid sick pay program. [90 Mich App 688-689.]

In line with this provision, the defendant insurance company refused to pay personal protection insurance benefits to plaintiff until he had exhausted his accrued sick leave. A panel of this Court, although noting the sick leave provisions were clearly encompassed within the contractual language coordinating work-loss benefits in the policy of insurance, ruled the Legislature did not intend for an employer-paid sick pay program to be included within the term "coverage" and, accordingly, found the exclusionary language in the no-fault policy inapplicable to plaintiff's sick leave.

In so ruling, the panel adopted the narrow definition of the word "coverage," later adopted by *LeBlanc,* which limits § 3109a deductibles and exclusions to "insurance coverage" upon the insured.

Although this Court, since. *LeBlanc,* has expanded the scope of coverages included within the meaning of "other health and accident coverage" subject to § 3109a coordination of benefits, the cases so doing have generally been limited to benefits corresponding to typical health insurance plans. Thus, the following coverages have been held to fall within "other health and accident coverage": benefits provided by health maintenance organizations, *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan,* 131 Mich App 268; 345 NW2d 683 (1983), and benefits received pursuant to an employer's self-insurance health plan, *Auto-Owners Ins Co v Lacks Industries,* 156 Mich App 837; 402 NW2d 102 (1986). Additionally, in *Lewis v Transamerica Ins Corp of America,* 160 Mich App 413; 408 NW2d 458 (1987), a panel of this Court ruled medical benefits received by a beneficiary under a Teamsters Union welfare plan were also subject to coordination under § 3109a, reasoning the beneficiary's entitlement to such medical benefits corresponded to the typical health insurance plan generally provided as a benefit of employment.

It is also helpful when construing provisions of the Michigan no-fault insurance act to look to the Uniform Motor Vehicle Accident Reparations Act (UMVARA). The UMVARA is one of the model acts which was utilized as source material in the drafting of the no-fault act. *Citizens Ins Co of America v Tuttle,* 411 Mich 536; 309 NW2d 174 (1981). Thus, where a provision of the no-fault act is virtually identical to a provision of the UMVARA, the UMVARA will be looked to for guidance in

construing a provision of the no-fault act. See *MacDonald v State Farm Mutual Ins Co,* 419 Mich 146; 350 NW2d 233 (1984). However, where there is an absence of a comparable provision in the Michigan act, it is presumed the Legislature considered but rejected the proposed language in the uniform act. See *Michigan Mutual Ins Co v Carson City Texaco, Inc,* 421 Mich 144; 365 NW2d 89 (1984). Here, § 3109a's counterpart in the uniform act provides in part as follows:

> (b) [B]asic reparation insurers may offer the following additional exclusions . . .
>
> * * *
>
> (2) [E]xclusions, in calculation of net loss, of any of those amounts and kinds of loss otherwise compensated by benefits or advantages a person receives or is unconditionally entitled to receive from any other specified source, if the other source has been approved specifically or as to type of source by the [commissioner] of insurance by rule or order adopted upon a determination by the [commissioner] (i) that the other source or type of source is reliable and that approval of it is consonant with the purposes of this Act, and (ii) if the other source is a contract of insurance, that it provides benefits for accidental injuries generally and in amounts as least as great for other injuries as for injuries resulting from motor vehicle accidents. [14 ULA Civil Procedural and Remedial Laws, UMVARA, § 14(b)(2), pp 82-83.]

In discussing this section, the official comments to § 14(b)(2) state:

> The cost reductions may be significant, however, in the case of an insurer offering to sell basic reparation policies to the employees of a large employer, who have defined, generous wage-continuation and accident and health benefits under a

common employer-furnished or trade union plan. [*Id.,* p 85.]

Thus, it is clear from the comments that, under the UMVARA, wage continuation benefits pursuant to a union agreement were intended to be coordinated with no-fault benefits otherwise payable. Instead of adopting the broader language of the uniform act, however, the Michigan act was drafted much more narrowly, and limited coordination to "other health and accident coverage." It appears, therefore, that in enacting the Michigan act the Legislature did not intend for no-fault benefits to be coordinated with a broad array of other benefits which may perhaps be equally duplicative. The Michigan Supreme Court's ruling in *LeBlanc, supra,* which construed the term "coverage" to mean protection afforded by an insurance policy, is consistent with this construction.

We therefore conclude the Legislature did not intend that § 3109a mandate coordination of benefits as received by plaintiff in the instant case. Although such a conclusion may ofttimes result in a plaintiff's receipt of duplicative work loss type benefits, such an interpretation is supported by prior case law as well as the Legislature's decision to reject the broad language contained in the UMVARA which would have clearly brought such benefits within the intent of the provision.

We therefore find no error in the trial court's grant of summary disposition in favor of plaintiff.

Affirmed.