LOCKRIDGE v STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

Docket No. 211687. Submitted October 13, 1999, at Detroit. Decided April
18, 2000, at 9:05 A.M.

Larry Lockridge brought an action in the Genesee Circuit Court
against State Farm Mutual Automobile Insurance Company, seek-
ing no-fault work-loss benefits for a period from April 3, 1995,
when he was injured in an automobile accident, to May 1996, when
he returned to work. The defendant moved for summary disposi-
tion on the basis that the plaintiff was precluded from making the
claim because he was prevented from working at the time of the
automobile accident because of a previous work-related injury and
was receiving worker's compensation wage-loss benefits at that
time and he continued to receive the worker's compensation bene-
fits until he returned to work. The court, Geoffrey L. Neithercut, J.,
agreed and granted summary disposition in favor of the defendant.
The plaintiff appealed.

The Court of Appeals *held*:

By accepting worker's compensation disability benefits in the
period following the automobile accident, the plaintiff effectively
admitted that his continuing inability to work was attributable to
his prior work-related injury. Because the plaintiff cannot demon-
strate that he suffered any wage loss as a result of the automobile
accident, the court properly denied no-fault benefits for wage loss.
The plaintiff is not entitled to no-fault work-loss benefits equal to
the differential between his worker's compensation benefits and his
predisability wage because he is precluded from showing that the
automobile accident resulted in a total or partial loss of wages.

Affirmed.

JANSEN, P.J., dissenting, stated that the plaintiff's receipt of
worker's compensation benefits does not preclude him from recov-
ering no-fault work-loss benefits. The trial court's ruling that the
plaintiff suffered no wage loss because he received and continued
to receive worker's compensation disability benefits is an error of
law. The plaintiff presented sufficient documentary evidence to
raise a material factual dispute regarding whether, but for the auto-
mobile accident, he would have returned to work two days after

the automobile accident. Summary disposition was improperly granted and the matter should be reversed and remanded for resolution of the factual dispute by the trier of fact.

INSURANCE — NO-FAULT WORK-LOSS BENEFITS — PRIOR WORK-RELATED INJURIES.

A plaintiff is precluded from claiming no-fault work-loss benefits for a period from the date the plaintiff is injured in a nonwork-related automobile accident until the plaintiff returns to work following the automobile accident where the plaintiff was prevented from working at the time of the automobile accident because of a previous work-related injury and was receiving worker's compensation benefits at the time of the automobile accident and continued to receive the worker's compensation benefits until the plaintiff returned to work; the plaintiff's acceptance of worker's compensation wage-loss benefits after the automobile accident constitutes a binding representation that work loss for that period is attributable to the work-related injury, not the injury received in the automobile accident (MCL 500.3107[1][b]; MSA 24.13107[1][b]).

*Bernstein & Bernstein* (by *William W. Watkinson, Jr.*), for the plaintiff.

*Draugelis & Ashton, L.L.P.* (by *Timothy M. McKercher*), for the defendant.

Before: JANSEN, P.J., and SAAD and GAGE, JJ.

SAAD, J.

## I. NATURE OF THE CASE

While plaintiff was off work because of a work-related disabling injury, and while he was accepting wage-loss benefits from General Motors Corporation (GM) under worker's compensation laws, plaintiff was injured in an automobile accident on April 3, 1995. For more than a year after his automobile accident, plaintiff continued to accept worker's compensation wage-loss benefits from GM and, by doing so, represented to GM that he was entitled to those benefits because his *work-related* injury continued to prevent

him from working. Plaintiff also sought work-loss benefits from his automobile insurance carrier, defendant State Farm Mutual Automobile Insurance Company, but defendant failed to pay any benefits. Plaintiff brought an action on December 12, 1995, seeking the payment of such benefits. While the action was pending, plaintiff returned to work in May 1996. Plaintiff ultimately sought wage-loss benefits from defendant for the period between the automobile accident and his return to work. Because plaintiff had accepted worker's compensation wage-loss benefits during this time, defendant moved to dismiss plaintiff's lawsuit for no-fault benefits. Defendant contended that when plaintiff continued to accept worker's compensation wage-loss benefits for the period following the accident, he represented that it was his work-related injury, and not the automobile accident injury, that prevented his return to work. The trial court agreed and held that

> by continuing to receive worker's comp, Plaintiff, regardless of the reason that he continued to stay out on comp for several more months, Plaintiff is saying to General Motors that he has a work related injury which doesn't allow him to return.[1]

The question before us is: Does plaintiff's acceptance of worker's compensation wage-loss benefits from April 1995 to May 1996 constitute a binding representation that his work loss for this period was attributable to his work-related injury rather than the injury received in the automobile accident, thereby preclud-

---

[1] As an alternative theory for granting defendant's motion, the trial court found that plaintiff had not actually lost any wages because he received worker's compensation in lieu of wages.

ing his claim for no-fault work-loss benefits for the April 1995 to May 1996 period? For reasons stated below, we answer the question yes and therefore affirm the trial court's grant of summary disposition.

## II. FACTS AND PROCEEDINGS

In July 1991, plaintiff suffered a neck injury after falling from a platform at the GM assembly plant where he was employed. After missing several months of work, plaintiff returned to his job on an intermittent basis until July 1993, when he began experiencing problems related to his fall. On July 12, 1993, as a result of the disabling injuries received in the fall, plaintiff began receiving worker's compensation benefits in the amount of $350.83 a week.[2]

On April 3, 1995, while he was still on leave from work and receiving worker's compensation wage-loss benefits, plaintiff was a passenger in an automobile that struck a curb and rolled over. As a result of the automobile accident, plaintiff suffered a "hangman's fracture" of his neck and was placed in a halo ring and vest. Plaintiff continued to accept worker's compensation benefits until his return to work in May 1996.

On December 12, 1995, plaintiff brought this action against defendant for work-loss benefits pursuant to the no-fault act, MCL 500.3107(1)(b); MSA 24.13107(1)(b). While the action was pending, plaintiff returned to work in May 1996. Plaintiff alleged that the injury he sustained in the automobile accident, and not the previous work-related injury, prevented

---

[2] According to plaintiff, at the time of the fall he had been receiving a weekly wage in excess of $1,400.

his return to work before May 1996, and thus defendant was liable for wage-loss benefits for that period under the no-fault act. Plaintiff averred that he would have returned to work only a few days after the accident if the accident had not occurred. In spite of these allegations, however, plaintiff continued to accept worker's compensation benefits after the automobile accident until May 1996 when he returned to work.

Defendant moved for summary disposition of plaintiff's lost-wages claim. Defendant maintained that plaintiff's receipt of worker's compensation benefits on the date the accident occurred, and his continued acceptance of such benefits until his return to work in May 1996, precluded plaintiff's claim for wage-loss benefits for the automobile accident under the no-fault act. The trial court agreed and granted summary disposition of plaintiff's claim for income loss.

### III. ANALYSIS

This Court reviews decisions regarding motions for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Motions under MCR 2.116(C)(10) test the factual support of the plaintiff's claim. *Id.* The court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted to determine whether a genuine issue of any material fact exists to warrant a trial. *Id.* Both this Court and the trial court must resolve all reasonable inferences in the nonmoving party's favor. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 618; 537 NW2d 185 (1995).

In granting defendant's motion, the trial court reasoned that because the only income received by plaintiff at the time of the accident was the worker's compensation benefits, and because plaintiff continued to receive that compensation after the accident and until his return to work, plaintiff suffered no loss of wages. Plaintiff takes issue with the trial court's statement. He argues that worker's compensation benefits are not wages within the meaning of the no-fault act and that the mere receipt of worker's compensation benefits does not automatically preclude receipt of no-fault benefits for lost wages. Plaintiff's analysis of this issue is strained and over-technical. Although the wording of the trial court's statement might not have been absolutely precise or accurate, it correctly stated the essence of the law as it applies here. By accepting worker's compensation disability benefits in the period following the automobile accident, plaintiff effectively admitted that his continuing inability to work was attributable to the 1991 industrial accident. Consequently, plaintiff cannot demonstrate that he suffered any wage loss *as a result of* the automobile accident. Accordingly, the trial court properly denied him no-fault benefits for wage loss.

Subsection 3107(1)(b) provides that a no-fault insurer is liable to pay benefits for

> [w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident *if he or she had not been injured.* [Emphasis added.]

In *MacDonald v State Farm Mut Ins Co*, 419 Mich 146; 350 NW2d 233 (1984), our Supreme Court explained this provision. The Court held that the ben-

efits provided for under subsection 3107(1)(b) are payable to "compensate the injured person for income he *would have received but for* the accident." *MacDonald*, 152 (emphasis added). In *MacDonald*, the plaintiff sustained disabling injuries in an automobile accident on November 10, 1976. Two weeks later, on November 25, 1976, the plaintiff suffered a heart attack. Either occurrence by itself would have prevented the plaintiff from working. *Id.*, 150. Our Supreme Court held that the plaintiff was eligible for no-fault work-loss benefits for the two-week period following the automobile accident—because that period of work loss was attributable to the accident— but the plaintiff became ineligible for no-fault benefits following the heart attack—because the plaintiff would have been unable to work for that period even if he had not had the automobile accident. The Court explained:

> [W]ork-loss benefits are available to compensate only for that amount that the injured person would have received had his automobile accident not occurred. Stated otherwise, work-loss benefits compensate the injured person for income he would have received but for the accident. In the present case, plaintiff would have worked and earned wages for two weeks, until the date of his heart attack. After that date plaintiff would have earned no wage even had the accident not occurred and, therefore, is ineligible for work-loss benefits after that date under § 3107(b). [*Id.*, 152.]

Therefore, in order to claim work-loss benefits for the period following the automobile accident, plaintiff here must show that it was the automobile accident, and not the prior workplace accident, that prevented him from working and earning wages. See *Williams v*

*DAIIE*, 169 Mich App 301, 304-305; 425 NW2d 534 (1988) (the plaintiff not entitled to work-loss benefits where he failed to document claim that but for the automobile accident, he would have returned to work).

Here, plaintiff asserts that the automobile accident occurred just days before he would have returned to work. However, plaintiff continued to accept worker's compensation benefits for the industrial accident in the period following the April 1995 automobile accident through the date he returned to work in May 1996. If plaintiff had recovered from the industrial accident, his worker's compensation benefits should have terminated the day he would have returned to work but for the automobile accident. However, plaintiff continued to accept the benefits for over a year. By continuing to receive the worker's compensation benefits during this period, plaintiff effectively admitted that his disability was attributable to the industrial accident rather than to the automobile accident. Plaintiff cannot represent to his employer that he is entitled to worker's compensation disability benefits because of the industrial accident, and simultaneously represent to his no-fault insurer that he is entitled to no-fault wage-loss benefits because of an automobile accident. Consequently, as a matter of law plaintiff cannot demonstrate the expectation of any income he would have received *but for the automobile accident.*[3]

---

[3] In any event, plaintiff's bare allegation that he would have returned to work is not supported by evidence as required by MCR 2.116(C)(10). At the time of the automobile accident, plaintiff had been unable to work regularly for nearly four years because of the 1991 industrial accident. Plaintiff maintains that he intended to return to work, but he does not support this allegation with anything more than a statement of his subjec-

Plaintiff argues that the trial court's ruling was erroneous because the trial court concluded that plaintiff's worker's compensation benefits were wages and that plaintiff therefore did not lose any wages. Plaintiff's argument that worker's compensation benefits should not be treated as wages misses the point. Regardless of how the law characterizes worker's compensation benefits, plaintiff is not entitled to work-loss benefits without showing that the loss of wages is attributable to the automobile accident, and not to the industrial accident.

Plaintiff's reliance on *Brashear v DAIIE*, 144 Mich App 667; 375 NW2d 785 (1985), is misplaced. In *Brashear*, the plaintiff was unable to work full-time for five months after receiving disabling injuries in an automobile accident. *Id.*, 668. Nonetheless, his employer continued to pay his full salary out of the company's good will. *Id.* When the plaintiff applied

---

tive intent. Nothing in the record establishes that plaintiff's employer or physicians were prepared to approve his return to work. During the motion hearing, in response to the trial court's question regarding whether it had been confirmed that plaintiff would have returned to work, counsel for plaintiff merely noted that Dr. Michael Sperl, a physician who had examined plaintiff in September 1995, believed that plaintiff's current disabilities were related solely to the automobile accident and in no way were connected with the earlier work-related injury. Dr. Sperl's testimony does not establish that plaintiff would have been earning wages but for the automobile accident. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Dr. Sperl's report does not create an expectation that plaintiff would have returned to work if not for the automobile accident. Thus, defendant was entitled to summary disposition under MCR 2.116(C)(10). *Quinto, supra.* See also *Frazier v Allstate Ins Co*, 231 Mich App 172, 176; 585 NW2d 365 (1998), holding that "a bare assertion of intent to secure employment without any corroboration of such intent or actions taken to obtain employment during the period of unemployment is insufficient to render an injured party 'temporarily unemployed.'"

for work-loss benefits from his no-fault carrier, the insurer argued that the plaintiff was ineligible for the benefits because he had not, in fact, suffered a loss of income. *Id.*, 668-669. This Court disagreed, and held instead that the employer's gratuitous payments were " 'collateral source payments rather than wages since they are not payments for work done during the time the employee was absent.' " *Id.*, 671.[4] The Court concluded that because the gratuitous payments were not wages, the plaintiff remained eligible for lost wages from his no-fault carrier. *Id.*, 671-672. Additionally, in *Spencer v Hartford Accident & Indemnity Co*, 179 Mich App 389; 445 NW2d 520 (1989), the plaintiff was injured in an automobile accident during the course of his employment and sustained injuries that prevented him from returning to work. As a result of the accident, the plaintiff received worker's compensation benefits and wage continuation benefits pursuant to a collective bargaining agreement between his employer and his union. *Id.*, 391. As in *Brashear*, the insurer in *Spencer* maintained that the plaintiff had not lost any income and was therefore ineligible for work-loss benefits. *Id.* This Court held, however, that an injured employee's receipt of wage continuation benefits pursuant to a collective bargaining agreement did not preclude him from suffering actual work loss under the no-fault act. *Id.*, 391-392.

Neither *Brashear* nor *Spencer* is relevant here. In both of those cases, the plaintiffs were able to support their assertions that they were not earning wages because injuries from an automobile accident pre-

---

[4] Quoting 14 ULA, Civil Procedural and Remedial Laws, Accident Reparations, Uniform Motor Vehicle Accident Reparations Act, § 1(a)(5)(ii), p 50.

vented them from working. The plaintiffs did not negate these assertions with conflicting statements respecting the cause of their inability to work. Furthermore, the automobile accident in *Spencer* was work related; thus, there was no need to distinguish disabling injuries caused by a workplace incident from disabling injuries caused by an unrelated automobile incident. In contrast, plaintiff here cannot demonstrate that his loss of wages was attributable to an automobile accident. Rather, by accepting the worker's compensation benefits, plaintiff in effect concedes that his workplace injuries would have prevented his return to work from April 3, 1995, through May 1996 regardless of the automobile accident.

Plaintiff places undue emphasis on his argument that worker's compensation benefits are not properly considered wages. In the context of this case, it makes no difference whether the worker's compensation benefits are characterized as substitute wages or collateral source payments. Either way, plaintiff remains ineligible for no-fault work-loss benefits because he cannot show any loss of wages because of the automobile accident.

Plaintiff also attempts to argue that he is entitled to the no-fault work-loss benefits equal to the differential between his worker's compensation benefits and his predisability wage. See *Popma v Auto Club Ins Ass'n*, 446 Mich 460; 521 NW2d 831 (1994), and *Kirksey v Manitoba Public Ins Corp*, 191 Mich App 12; 477 NW2d 442 (1991). Again, plaintiff's argument misses the mark. Because plaintiff is precluded from showing that the automobile accident resulted in a total or partial loss of wages, plaintiff is not entitled to any amount of no-fault work-loss benefits.

Affirmed.

Gage, J., concurred.

Jansen, P.J. (*dissenting*). I respectfully dissent and would reverse the trial court's ruling.

Defendant moved for partial summary disposition regarding the work-loss benefits claim, contending that plaintiff's continued acceptance of worker's compensation disability benefits until May 1996, well after the automobile accident, constituted an admission on his behalf that he continued to be disabled because of his work-related injury. The trial court granted the motion, essentially ruling that plaintiff had suffered no wage loss because he was collecting worker's compensation disability benefits and had not attempted to return to work at the time of the automobile accident, and because he continued to receive worker's compensation disability benefits after the accident.

MCL 500.3107(1)(b); MSA 24.13107(1)(b) provides that work-loss benefits are available for "loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." Our Supreme Court has made clear that work-loss benefits compensate the injured person for income that person would have received but for the accident. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 645; 513 NW2d 799 (1994), citing *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 152; 350 NW2d 233 (1984); see also *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 472; 521 NW2d 831 (1994) (work-loss benefits replace income that a claimant would have earned had the claimant not

been injured). Further, work-loss benefits are not necessarily restricted to a plaintiff's wage at the time of the accident. *Id.* "Work-loss benefits are meant primarily to provide claimants with simple income insurance and are intended to compensate claimants approximately dollar for dollar for the amount of wages lost because of the injury or disability." *Id.*

The trial court erred in ruling that plaintiff suffered no "wage loss" because he was collecting worker's compensation disability benefits. Receipt of worker's compensation disability benefits does not preclude plaintiff from recovering work-loss benefits under subsection 3107(1)(b). In *Brashear v DAIIE*, 144 Mich App 667; 375 NW2d 785 (1985), this Court held that "work loss" as utilized in subsection 3107(1)(b) includes situations in which an injured employee loses time from work that the employee would have performed had he not been injured, even where the employer continues the employee's wages under a formal wage-continuation plan or as a gratuity. In *Brashear*, the plaintiff was injured in an automobile accident, was completely off work for nearly four months, and then returned to work on a part-time basis for the following three months. During that period, however, the employer paid the plaintiff his salary because of "good will." This Court determined that the plaintiff was still entitled to work-loss benefits under subsection 3107(1)(b) because the statute defines work loss as "loss of income from work an injured person *would have performed* . . . if he or she had not been injured." (Emphasis added.) Similarly, in *Spencer v Hartford Accident & Indemnity Co*, 179 Mich App 389, 392; 445 NW2d 520 (1989), this Court held that the plaintiff was entitled to work-loss bene-

fits under subsection 3107(1)(b) even where the plaintiff was receiving his wages under a formal wage-continuation plan (collective bargaining agreement). Thus, contrary to the majority's assertion, I would find that *Brashear* and *Spencer* are directly relevant and controlling here.

Accordingly, the trial court's ruling that plaintiff suffered no wage loss because he received, and continued to receive, worker's compensation disability benefits is an error of law. Plaintiff is entitled to receive work-loss benefits under subsection 3107(1)(b), even where he received worker's compensation disability benefits.

In a somewhat different twist, defendant also argues, and the trial court agreed, that plaintiff's acceptance of worker's compensation disability benefits after the automobile accident constitutes an admission on his part of a work-related disability that precludes a claim for work-loss benefits under § 3107. In this regard, the trial court ruled that "by continuing to receive worker's comp, Plaintiff, regardless of the reason that he continued to stay out on comp for several more months, Plaintiff is saying to General Motors that he has a work related injury which doesn't allow him to return."

Defendant relies on *Williams v DAIIE*, 169 Mich App 301; 425 NW2d 534 (1988), to support its contention in this regard. In *Williams*, the plaintiff suffered an initial on-the-job injury in 1968, and suffered subsequent on-the-job injuries in 1980 and 1981. In July 1982, the plaintiff's doctor released the plaintiff for return to work with certain restrictions. The plaintiff's employer did not have a position available with the work restrictions. In August 1982, while on medical

disability leave, the plaintiff injured his neck in an automobile accident and in June 1983 the plaintiff complained of neck pain. However, the plaintiff's treating physician attributed the June 1983 neck pain to the 1968 work injury, and not the 1982 automobile accident. This Court affirmed the grant of summary disposition under MCR 2.116(C)(10) in favor of the defendant, stating that the pleadings, affidavits, and depositions did not raise any genuine issue of material fact with respect to whether, but for the automobile accident, the plaintiff would have returned to work. This Court noted that the plaintiff's own doctor attributed his continued neck pain to the 1968 work injury and not to the automobile accident and that the plaintiff's disability was the result of a work-related injury. This Court also noted that the plaintiff never produced a letter he claimed he received from his employer indicating that he could return to work. *Williams, supra,* pp 304-305.

I believe that, unlike the plaintiff in *Williams,* plaintiff in the present case has set forth sufficient documentary evidence to raise a material factual dispute regarding whether, but for the automobile accident, he would have returned to work. First, the injuries are different and can be attributable to their specific events. The medical records show that the work-related injury involved injury to and ultimately surgery (cervical spinal fusion) to C4, C5, and C6 of plaintiff's neck. The automobile accident involved a hangman's fracture to C2 and C3 of plaintiff's neck. A June 8, 1995, letter from John M. Commet, D.O., to Dr. William Moore indicates that shortly after plaintiff was evaluated by Dr. Moore, "it was felt that an evaluation by a work hardening program would be a bene-

fit for us to help determine [plaintiff's] capabilities." However, after that evaluation by Dr. Moore, plaintiff was involved in the automobile accident. Another letter dated September 6, 1995, from Michael G. Sperl, M.D., to the Flint area worker's compensation center, indicates that plaintiff's "symptomatology" relating to his July 1991 work-related injury and subsequent January 1994 surgery "had almost fully abated," and plaintiff was then "getting ready to return to work under light duty post surgical restrictions when he was involved in an April, 1995 motor vehicle accident." Importantly, Dr. Sperl's letter states:

> The patient's primary clinical finding today is in relationship to a history of a[n] April, 1995 motor vehicle accident which has resulted in a nonwork related C2 fracture. The patient is at this point and time totally and functionally limited. I do not feel that he could resume his prior employment duties as described. His present level of disability is directly related to the motor vehicle accident and not to the July, 1991 work related incident. The patient does require appropriate medical follow-up given this C2 fracture as he has not yet reached the point of maximum medical improvement.

Finally, a letter from Richard J. Kovan, M.D., to Dr. Commet, dated February 14, 1996, states that plaintiff was due to return to work two days after he was involved in the automobile accident.

In the present case, because there is evidence that plaintiff would have returned to work two days after the automobile accident occurred but for the fact that the automobile accident did occur, plaintiff may be entitled to work-loss benefits under subsection 3107(1)(b) of the no-fault act. This is a factual dispute that a trier of fact will have to resolve. Accordingly,

there being a material factual dispute regarding whether but for the automobile accident plaintiff would have returned to work, summary disposition was improperly granted in favor of defendant.

I would reverse and remand for further proceedings.