CAVANAGH, J.
(dissenting). In this no-fault case, I would conclude that the long-term disability (LTD) plan covering plaintiff does not constitute “other health and accident coverage” subject to coordination under MCL 500.3109a. I am not convinced that the dichotomy set *225 forth by Spencer v Hartford Accident & Indemnity Co, 179 Mich App 389; 445 NW2d 520 (1989), and Rettig v Hastings Mut Ins Co, 196 Mich App 329; 492 NW2d 526 (1992), is inconsistent with the Legislature’s intent. Moreover, I would not decide this jurisprudentially significant issue without the benefit of full briefing and oral argument. Accordingly, I must respectfully dissent.
I. FACTUAL BACKGROUND
Plaintiff worked for the Michigan Department of Corrections. Under his collective bargaining agreement, plaintiff was allowed to participate in the LTD plan. The LTD plan was administered by a private insurance company; however, the plan was self-funded through payroll deductions and employer contributions. While still employed by the Department of Corrections, plaintiff was injured in an automobile accident. Plaintiff began receiving benefits under the LTD plan, and defendant, plaintiffs no-fault insurer, coordinated the LTD benefits with the no-fault work-loss benefits.- Defendant maintained that the setoff was permissible under MCL 500.3109a. Plaintiff filed this action to challenge the setoff, and the parties filed cross-motions for summary disposition. The trial court granted summary disposition in favor of plaintiff, and the Court of Appeals affirmed.
II. LEGAL BACKGROUND
A. MCL 500.3109a
MCL 500.3109a provides:
An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deduct *226 ibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.
B. SPENCER v HARTFORD ACCIDENT & INDEMNITY CO
In Spencer, supra, the plaintiff was injured during the course of his employment and was unable to return to work. After the accident, the plaintiff received worker’s compensation benefits. Additionally, under the terms of a collective bargaining agreement between the plaintiffs union and his employer, the plaintiff received the difference between his worker’s compensation benefits and his base rate of pay. The defendant insurance company denied liability for no-fault work-loss benefits, claiming, among other things, that the wage continuation benefits were subject to setoff pursuant to MCL 500.3109a.
The Spencer panel noted that the “purpose of § 3109a is to reduce the cost of no-fault insurance by allowing insurers to offer policies that coordinate benefits with other similar coverages in return for charging a statutorily mandated reduced premium.” Spencer, supra at 396. The Court of Appeals reasoned that § 3109a expressly limits setoff to health and accident coverage on the insured and, therefore, the issue was whether the additional wages the plaintiff received pursuant to a collective bargaining agreement constituted “other health and accident coverage” under § 3109a. The Court of Appeals held that the Legislature did not intend for § 3109a to apply to the type of benefits the plaintiff received.
After detailing this Court’s decision in LeBlanc v State Farm Mut Automobile Ins Co, 410 Mich 173; 301 *227 NW2d 775 (1981), as well as its own decision in Orr v DAIIE, 90 Mich App 687; 282 NW2d 177 (1979), the Court of Appeals noted that the scope of coverages within the meaning of “other health and accident coverage” had been subsequently expanded. However, “the cases so doing have generally been limited to benefits corresponding to typical health insurance plans.” Spencer, supra at 398. In light of these decisions, and the absence of a clear construction of the phrase “other health and accident coverage,” the Court of Appeals observed:
It is also helpful when construing provisions of the Michigan no-fault insurance act to look to the Uniform Motor Vehicle Accident Reparations Act (UMVARA). The UMVARA is one of the model acts which was utilized as source material in the drafting of the no-fault act. Citizens Ins Co of America v Tuttle, 411 Mich 536; 309 NW2d 174 (1981). Thus, where a provision of the no-fault -act is virtually identical to a provision of the UMVARA, the UMVARA will be looked to for guidance in construing a provision of the no-fault act. See MacDonald v State Farm Mutual Ins Co, 419 Mich 146; 350 NW2d 233 (1984). However, where there is an absence of a comparable provision in the Michigan act, it is presumed the Legislature considered but rejected the proposed language in the uniform act. See Michigan Mutual Ins Co v Carson City Texaco, Inc, 421 Mich 144; 365 NW2d 89 (1984). [Id. at 398-399.]
The Spencer Court then examined the language and official comments of the counterpart of § 3109a in the model act, 14 ULA Civil Procedural and Remedial Laws, UMVARA, § 14(b)(2). Notably, the Court of Appeals quoted the official comments to § 14(b)(2):
“The cost reductions may be significant, however, in the case of an insurer offering to sell basic reparation policies to the employees of a large employer, who have defined, generous wage-continuation and accident and health ben *228 efits under a common employer-furnished or trade union plan.” [Spencer, supra at 399-400.]
In light of the differences between Michigan’s no-fault act and the model act, the Court of Appeals reasoned:
Thus, it is clear from the comments that, under the UMVARA, wage continuation benefits pursuant to a union agreement were intended to be coordinated with no-fault benefits otherwise payable. Instead of adopting the broader language of the uniform act, however, the Michigan act was drafted much more narrowly, and limited coordination to “other health and accident coverage.” It appears, therefore, that in enacting the Michigan act the Legislature did not intend for no-fault benefits to be coordinated with a broad array of other benefits which may perhaps be equally duplicative. [Id. at 400.]
Thus, the Court of Appeals in Spencer held that the plaintiffs wage continuation benefits pursuant to a collective bargaining agreement did not constitute “other health and accident coverage” within the meaning of § 3109a.
C. RETTIG v HASTINGS MUT INS CO
In Rettig, supra, the Court of Appeals was again called upon to interpret § 3109a. The plaintiff in Rettig was injured in an automobile accident. At the time of the accident, the plaintiff was insured by the defendant under a no-fault insurance policy that contained a coordinated-benefits provision. The plaintiff also had an LTD plan issued by a different insurance company and made available to the plaintiff by her employer. The LTD plan was paid for by the plaintiff through payroll deductions. Notably, the plaintiff was employed as a supervisor and was not covered under a collective bargaining agreement. The trial court held that the *229 defendant was entitled to a setoff under § 3109a because the plaintiffs LTD plan constituted “other health and accident coverage” under § 3109a, and the Court of Appeals affirmed.
The Rettig Court, similar to the Spencer Court, observed that “[w]hile the scope of coverage included within the meaning of ‘other health and accident coverage’ ... has expanded since LeBlanc, it has generally been limited to benefits typically associated with health insurance plans.” Rettig, supra at 333. Accordingly, the Court of Appeals concluded that the LTD benefits received by the plaintiff fell within the purview of § 3109a “because they constitute protection typically provided by health insurance plans, which include payments for medical expenses resulting from an accident as well as wage-loss replacement benefits.” Rettig, supra at 333.
Importantly, the Court of Appeals reasoned that its holding did not conflict with Spencer. The panel in Rettig observed that the plaintiff in Spencer received wages directly from his employer pursuant to a collective bargaining agreement. The Court of Appeals further noted:
There, this Court observed that under the Uniform Motor Vehicle Accident Reparations Act, wage continuation benefits pursuant to a union agreement were intended to be coordinated with no-fault benefits, but that the Michigan version of the uniform act contained more restrictive language and limited coordination of benefits to insurance coverage. In contrast to Spencer, the long-term disability benefits in this case were provided to plaintiff by Reliance Standard Life Insurance Company pursuant to an insurance policy, not a collective bargaining agreement. [Id.]
III. THE COURT OF APPEALS DECISION IN THIS CASE
Here, the Court of Appeals, in an unpublished two-to-one decision, concluded that this case “is more like *230 Spencer than Rettig.” Unpublished opinion per curiam, issued January 27, 2004 (Docket No. 245068). The majority reasoned that, like the plaintiff in Spencer, this “plaintiff received wage loss benefits from his employer through a formal wage continuation plan pursuant to a collective bargaining agreement. Consistent with established precedent, we agree with the trial court and conclude that those wage continuation benefits are not ‘other health and accident coverage’ within the contemplation of MCL 500.3109a.”
Judge ZAHRA dissented, concluding that defendant was entitled to a setoff for the LTD wage-loss benefits because this case was more like Rettig than like Spencer. Unlike the benefits in Spencer, Judge ZAHRA opined, the LTD benefits in this case were not paid directly by the employer; rather, the plan was self-funded through accumulated payroll deductions. Accordingly, the Court of Appeals dissent found Rettig controlling because the LTD benefits plaintiff received constituted protection typically provided by health insurance plans. Moreover, Judge ZAHRA reasoned that the notion that plaintiffs LTD benefits were not actually provided by an insurance company was not dispositive.
IV DISCUSSION
I agree with the majority that the case law is sufficiently “muddled” regarding the precise meaning of “other health and accident coverage.” Moreover, I agree with the majority that the great weight of the case law suggests that the key question for § 3109a purposes is whether the coverage is typically provided by an insurance company. I disagree, however, with the majority’s decision to peremptorily overrule Spencer, supra. More *231 over, I disagree with the majority’s decision to decide this case without the benefit of full oral argument and briefing.
In light of Spencer’s thoughtful analysis, I do not believe that the legislative distinction noted by the Court of Appeals is accidental. Even if the term “coverage” is interpreted broadly, there is a difference between a self-funded, noninsurance LTD plan pursuant to a collective bargaining agreement and a so-called typical insurance plan for purposes of the no-fault act. Moreover, I am persuaded by Spencer’s rationale that the Legislature intended this difference to be dispositive when it refused to incorporate the broader UMVARA provision into our no-fault act. Accordingly, if a person falls in the Spencer box, such as this plaintiff, then setoff is not permitted under § 3109a. However, if a person falls within the Rettig box, then setoff is permitted. As noted by the trial court, this dichotomy is not as arbitrary as it appears.[1] Thus, because I am not convinced that Spencer was wrongly decided, and because plaintiff falls within the Spencer box, I would affirm the Court of Appeals decision.
*232 The majority concludes that Spencer was erroneously decided because “[i]t is simply not relevant under the statutory text whether the coverage arose from a collective bargaining agreement.” Ante at 220. Rather, “[t]he text of § 3109a refers to health and accident coverage-the central question is whether other coverage exists, not how it came to exist.” Id. (emphasis in original). The majority then criticizes the Spencer Court for examining the language of the model act on which our no-fault act was based and for venturing beyond the text of the statute. Stated differently, the majority criticizes the Spencer Court for evaluating the “muddled” case law construing the text of the statute, for examining the model act on which our no-fault act was based, and for not ignoring the elephant standing in the corner once the panel reasonably concluded that there is a glaring difference between the two acts.
This Court, however, has previously acknowledged that it is entirely appropriate, if not prudent, to examine a model act on which a Michigan statutory scheme was based when attempting to discern the Legislature’s intent. See, e.g., Donajkowski v Alpena Power Co, 460 Mich 243, 256 n 14; 596 NW2d 574 (1999) (“The fact that our Legislature did not include this restriction in adopting its version of the model contribution act is significant to any good-faith effort to give meaning to the Legislature’s intent.”). Here, the UMVARA “clearly was ‘one of the model acts utilized as source material in the drafting of the no-fault act....’” Marquis v Hartford Accident & Indemnity (After Remand), 444 Mich 638, 652 n 17; 513 NW2d 799 (1994), quoting Tuttle, supra at 546. And § 3109a was plainly based on § 14(b)(2) of the UMVARA. See Spencer, supra. Moreover, this Court has held that “where the statutory language differs from the UMVARA model, courts can presume that the Legislature considered the model act *233 and rejected it.” Marquis, supra at 652 n 17. Thus, in my view, the Spencer panel properly consulted the model act’s language and official comments when making its decision. See, e.g., Ouellette v Kenealy, 424 Mich 83, 86-87; 378 NW2d 470 (1985).
Even though the majority claims that the UMVARA should not have been examined, the majority nonetheless travels beyond the text of the statute in an attempt to explain away the Legislature’s deviation from the language in the model act and, at the same time, further undermine the Spencer Court’s ultimate conclusion. For example, the majority posits that the Legislature may not have included the language from § 14(b)(2) of the model act because “our Legislature might simply have found a better way than the drafters of the model provision to express the same protection.” Ante at 222. The majority further surmises, “[p]erhaps our Legislature used a synonym or more succinct language to state whatever the drafters of the model provision had attempted to say.” Id. Without citing any particular provision, the majority also hypothesizes that “the Legislature might have concluded that another statutory provision in Michigan rendered the model provision unnecessary.” Id. The majority poses these questions in an effort to discount the Spencer Court’s conclusion that § 3109a is more narrow than the model act.
In my view, however, the majority’s attempts only solidify the conclusion reached in Spencer. Again, this Court has held that “where the statutory language differs from the UMVARA model, courts can presume that the Legislature considered the model act and rejected it.” Marquis, supra at 652 n 17. Accordingly, Spencer's position that the Legislature rejected the applicable portion of the UMVARA in favor of a more *234 narrow provision is more defensible than the majority’s translucent attempts to explain away the deviation and further muddy the waters. I believe that the Spencer Court adequately explained that because the Legislature rejected one portion of § 14 of the UMVARA, the Michigan statute is “narrower” (i.e., it does not contain the rejected portion of § 14). Moreover, I believe that under these circumstances — where § 14 of the UMVARA differs from § 3109a, and a self-funded noninsurance LTD plan under a collective bargaining agreement is implicated— the Michigan statute produces a different result.
Further, the majority explains that “even if a statute is written more narrowly than a model provision, a court’s analysis does not end there” because even the narrow statute could apply to the facts of a given case. Ante at 222 (emphasis in original). Thus, even if Spencer were supportable, the majority claims that a court cannot merely assert that the statute is narrow and conclude that it does not apply. The majority simply dismisses the Spencer Court’s analysis as incomplete.
In my view, Spencer’s rationale is plainly supportable. The primary goal of statutory interpretation is to discern the Legislature’s intent. To this end, the Court of Appeals examined the relevant statutory language and the “muddled” case law that construed this language, consulted the source of the statutory provision, found a difference between the model act and the statutory provision, and reasonably concluded that the Legislature rejected this portion of the model act and intended that wage continuation benefits pursuant to a collective bargaining agreement should not constitute “other health and accident coverage” within the meaning of § 3109a. I do not believe that Spencer’s approach was incomplete. Indeed, I believe the approach was prudent and supported by our case law. When compared *235 with the majority’s approach, I prefer Spencer’s approach under these circumstances because it best effectuates, rather than ignores, the Legislature’s apparent intent.
Finally, I would be remiss if I did not point out that neither the parties nor the lower courts in this case questioned the validity of Spencer’s rationale. Rather, defendant and the Court of Appeals dissent simply argued that this case was more like Rettig than Spencer. Because the majority has seen fit to take aim at Spencer, the parties never specifically briefed this issue, and, arguably, this result was not clearly foreshadowed, I would have preferred to grant leave to appeal to have the benefit of full briefing and oral argument on this particular issue. As shown by the majority and dissenting opinions, the ongoing validity of Spencer is a jurisprudentially significant issue that could have wide implications. Thus, even though I believe at this point that Spencer was properly decided, I would prefer to grant leave and actually hear what the parties have to say on this particular issue.
V CONCLUSION
I would conclude that Spencer was correctly decided and, therefore, would hold that the LTD plan covering this plaintiff is not subject to setoff under § 3109a. Accordingly, I would affirm the decision of the Court of Appeals. However, because Spencer’s viability is jurisprudentially significant and the parties did not specifically brief this issue, I would prefer to grant leave to appeal to have the benefit of full briefing and oral argument on whether Spencer was properly decided. Thus, I must respectfully dissent.
KELLY, J., concurred with CAVANAGH, J.

 In granting plaintiffs motion for summary disposition, the trial court stated:
I am persuaded that at this time case law does clearly hold that the legislature intended section 3109a only to apply to wage continuation benefits which are funded by insurance as opposed to wage continuation benefits which are self-funded. That is not as arbitrary as it at first may sound, because I agree with the Defendant that there’s a clear legislative policy behind the statute, and that to trade — or mandate, I should say, the trading of a class of lower premium insurance policies in return for the acceptance by the consumer of coordination of benefits, not in this fact situation we’re not talking about a consumer buying an insurance policy. We’re talking about a consumer being part of a bargaining unit which collectively bargained a self-funded, non-insurance funded wage continuation benefit.